Dwain DOWNING and Vanessa Downing, Appellant,

v.

Dr. Roy C. GULLY, D.V.M., P.C., d/b/a Cooper Place Animal Clinic, Appellee.

No. 2–95–097–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 25, 1996.

Rehearing Overruled Feb. 29, 1996.

Dwain Downing, Arlington, pro se.

Donald A. Ferrill, Andrew L. Wambsganss, Christopher J. Pruitt, Brown Thompson Pruitt & Peterson, P.C., Fort Worth, for appellee.

Before CAYCE, C.J., and DAUPHINOT and JOHN HILL (Sitting by Assignment), JJ.

## OPINION

DAUPHINOT, Justice.

Dwain and Vanessa Downing appeal a summary judgment entered against them on their claims of negligence and misrepresentation against their veterinarian, Dr. Roy Gully, d/b/a Cooper Place Animal Clinic. Because we find that the clinic's affidavits are legally sufficient and also that Dr. Gully is immune from liability on the misrepresentation claim, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In July of 1992, the Downings brought their dog "Rusty" to Dr. Gully's veterinary clinic for a neutering operation. Rusty, a championship breed Shih Tzu, needed the operation because one of his testicles failed to drop into his scrotum and, instead, remained lodged inside his body. The Downings were told that unless Rusty was neutered soon, he would have a high risk of testicular cancer. After having the operation

explained to them by the Clinic, the Downings signed an anesthetic risk authorization form, but they declined to have preoperative blood screening done on Rusty. Dr. Laurie Kutch, a member of Dr. Gully's medical staff and a licensee of the Texas State Board of Veterinary Medical Examiners, administered the anesthesia and performed the operation. After surgery, but before Rusty had fully recovered from the anesthesia, he died. Dr. Kutch used CPR in an attempt to resuscitate Rusty, but she was unsuccessful.

The Downings sued the Clinic in March of 1994, asserting that the negligent conduct of the Clinic proximately caused Rusty's death and that statements made by Dr. Gully violated the Deceptive Trade Practices Act (DTPA).[1] Specifically, the Downings asserted that the Clinic was negligent in failing to: (1) properly administer the anesthesia as would another doctor under the same or similar circumstances; and (2) properly control their employees. The Downings' DTPA claim arose from a statement made by Dr. Gully before the operation that he would be able to adequately handle the procedure. In September of 1994, the Clinic moved for summary judgment on both claims, asserting that: (1) it had not breached the standard of care for the veterinary medical profession; and (2) it could not be liable under the DTPA because the Veterinary Licensing Act specifically excludes veterinarians from DTPA claims.[2] The court granted the Clinic's motion for summary judgment.

**POINT OF ERROR ONE**

■ In their first point of error, the Downings complain that the trial court erred in granting the Clinic's motion for summary judgment on their negligence claim. Because there is currently no case law in Texas establishing how veterinary negligence cases are to be analyzed, we will, as other jurisdictions have done, adopt the standard applied to physicians and surgeons in medical malpractice cases.[3] The elements of a medical negligence claim are: (1) a duty to conform to a certain standard of care; (2) a failure to conform to the required standard; (3) actual injury; and (4) a reasonably close causal connection between the conduct and the injury.[4] The Clinic claims that its summary judgment evidence, affidavits from Dr. Kutch and Dr. Gully, conclusively prove that it did not breach the required standard of care. We agree.

■ A defendant seeking summary judgment must conclusively prove that the plaintiff cannot prevail.[5] Therefore, a defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment.[6]

■ In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[7] The burden of

1. The DTPA is codified beginning at Tex.Bus. & Com.Code Ann. § 17.41 (Vernon 1987).

2. The Veterinary Licensing Act is found beginning at Tex.Rev.Civ.Stat.Ann. art. 8890 (Vernon Pamph.1996).

3. *Storozuk v. W.A. Butler Co.*, 3 Ohio Misc. 60, 61, 203 N.E.2d 511, 512 (1964); *Ladnier v. Norwood*, 781 F.2d 490, 492 (5th Cir.1986); *see* Cheryl M. Bailey, Annotation, *Veterinarian's Liability for Malpractice*, 71 A.L.R. 4th 811, 821–22 (1989) ("Several courts have held that the body of law developed in medical malpractice actions also applies to veterinary malpractice actions.... Because of the vast numbers of medical malpractice cases and comparatively few veterinary malpractice actions, the latest theories of recovery, arguments, jurisprudential trends, in-

cluding the applicable standard of care, and techniques for presenting evidence tend to become manifest in the medical malpractice cases, but apply to veterinary malpractice actions as well.")

4. *Armbruster v. Memorial Southwest Hosp.*, 857 S.W.2d 938, 940 (Tex.App.—Houston [1st Dist.] 1993, no writ).

5. *Id.*

6. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

7. *See* Tex.R.Civ.P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

proof is on the movant,[8] and all doubts about the existence of a genuine issue to a material fact are resolved against the movant.[9] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[10]

Because we are treating this as a medical malpractice claim, the Clinic's summary judgment evidence must establish the following as a matter of law: (1) the applicable standard of care; (2) the treatment and services provided to the patient and the reason for that treatment; and (3) that the treatment and services complied with the standard of care used by other reasonably prudent veterinary care providers in the same or similar circumstances.[11] The threshold question, then, is the standard of care, which must be established so that the fact finder can determine if the defendant deviated from it.[12]

■ In medical negligence cases, the court is necessarily guided solely by expert opinion.[13] A summary judgment may be based on an expert's uncontroverted testimony if the testimony is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and capable of being readily controverted.[14] Likewise, the affidavit of an interested expert who is also a party to the case can support a summary judgment if it meets the above requirements of rule 166a(c).[15] But, an expert cannot merely state that he knows the standard of care and conclude that it was met because affidavits that only state conclusions, as opposed to facts, are insufficient summary judgment proof.[16] Instead, the expert must state what the standard of care is and discuss what was done to meet it.[17]

■ Having laid out the standard of review for summary judgments on medical negligence claims, we now look to the affidavits filed by the Clinic. In pertinent parts, the affidavits state:

### Dr. Gully

At all time[s] surrounding this surgical procedure, I followed accepted standards of veterinary medical care in the diagnosis, treatment, and care of Plaintiffs' dog. At all times relevant to this surgery, I exercised the level of care that a reasonably prudent member of my profession with similar skill, education, expertise, and training would have followed in performing the surgical procedure. At no time relevant to this surgery, did I deviate from the accepted standard of care for the veterinary medical profession. I informed the Plaintiff, Dwain Downing, of all risks and complications of the surgery that a reasonable and prudent member of the veterinary medical profession would have disclosed.

At all times relevant to this surgery, I exercised the level of control and supervision over my veterinary medical staff and my lay staff that a practitioner of similar skill, training, and education would have under the same or similar circumstances. I have directly supervised Dr. Kutch during the performance of hundreds of operations and procedures of this nature, including the administration of anesthesia. The level of care provided by Dr. Kutch in performing this surgery did not deviate from the accepted standard of care for veterinary medical professionals.

**8.** *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990).

**9.** *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

**10.** *Great Am.*, 391 S.W.2d at 47.

**11.** *Chopra v. Hawryluk*, 892 S.W.2d 229, 231 (Tex.App.—El Paso 1995, writ denied).

**12.** *Coan v. Winters*, 646 S.W.2d 655, 657 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).

**13.** *Armbruster*, 857 S.W.2d at 941.

**14.** Tex.R.Civ. P. 166a(c).

**15.** *Armbruster*, 857 S.W.2d at 941.

**16.** *Id.; Martin v. Petta*, 694 S.W.2d 233, 238 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.).

**17.** *Armbruster*, 857 S.W.2d at 941.

### Dr. Kutch

Since being licensed by the Texas State Board of Veterinary Medical Examiners in 1992, I have performed over 200 surgeries and administered over 450 surgical anesthesias in accordance with accepted standards of care for veterinary medical professionals.

On or about July 21, 1992, Plaintiff, Dwain Downing, brought a Shih Tzu dog to Cooper Place Animal Clinic to be neutered. Prior to the surgical procedure, I performed a physical examination of the animal to determine his condition and readiness for the operation. No lab work was performed on the dog at Plaintiff Dwain Downing's request. The dog appeared to be healthy with normal breathing and alertness. At that time, I determined the dog was cryptorchid, that is, the right testicle was retained within the abdomen.

The dog was carried into the operating room and prepared for surgery. Anesthesia was induced with a 2% solution of thiamylal sodium delivered intravenously through the cephalic vein. Following induction, the animal was intubated and maintained under general anesthesia using the gas anesthetic machine with oxygen and isoflurane.

The animal's abdomen and pre-scrotal region was clipped and alternatively scrubbed with nolvasan and alcohol. I made a pre-scrotal incision, through which I ligated and removed the left testicle. I next made an abdominal incision in the inguinal region. Using a spay hook, I probed for the retained testicle. The right testicle was ligated and removed through this incision. Both incisions were closed using a three layer closure.

After the surgery was completed, I discontinued use of isoflurane and administered pure oxygen to allow for rapid removal of the isoflurane from the body. I carried the animal to the recovery area where he expired a few minutes later. I attempted resuscitation by administering CPR without success.

At all times relevant to this surgery, I exercised the level of care that a reasonable and prudent member of my profession with similar skill, education, expertise, and training would have followed in administering the anesthesia and performing the surgical procedure. At no time relevant to the surgery did I deviate from the accepted standard of care for the veterinary medical profession.

Appellants argue that the affidavits are legally insufficient to sustain the summary judgment because they are mere conclusions and fail to establish the applicable standard of care. We disagree. Dr. Kutch's affidavit sets out with considerable detail the actions she took in administering the anesthesia and performing the operation. Her affidavit also sets out her experience and qualifications to perform such procedures. After establishing factually what she did to Rusty, the affidavits state that they followed the accepted standard of care with regard to their treatment of Rusty and deny ever deviating from it. Because the Clinic did not rely merely on conclusions and generalizations, the affidavits are competent summary judgment evidence.[18] And although neither affidavit declares specifically what the standard of care is, absent any evidence to the contrary, it can reasonably be inferred from the affidavits of Dr. Gully and Dr. Kutch that they acted in accordance with the applicable veterinary standard of care.[19] Therefore, we find that the Clinic's affidavits were sufficient to negate the element of breach of the standard of care.

■ The Downings' other argument under this point is that the doctrine of *res ipsa loquitur* should apply and preclude the Clinic from summary judgment. However, the administration of anesthetics and the particulars of a neutering operation are not in the common knowledge of a layman and, therefore, the doctrine does not apply in this

---

**18.** Tex.R.Civ. P. 166a(c), (f).

**19.** *See Cedillo v. Jefferson*, 802 S.W.2d 866, 871 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Parrish v. Brooks*, 856 S.W.2d 522, 528 (Tex.App.—Texarkana 1993, writ denied).

**186**

case.[20] The Downings' first point of error is overruled.

## POINT OF ERROR TWO

■ In their second point of error, the Downings contend that the trial court erred in granting the Clinic's motion for summary judgment on their DTPA claim. The Downings complain that Dr. Gully misrepresented to them the Clinic's capability to handle the operation. Both Dr. Gully and Dr. Kutch are licensed under the Texas Veterinary Licensing Act.[21] Because section 18C of the Act expressly states that the DTPA "does not apply to a veterinarian licensed under this Act with respect to claims for damages for veterinary malpractice or alleged to have resulted from the negligence on the part of the veterinarian," [22] we find that the Clinic is entitled to judgment as a matter of law on the Downings' DTPA claim. The Downings contend that this results in a violation of the Texas Constitution's open courts provision.[23] But, because the open courts provision only applies to common-law claims and the DTPA is a statutory cause of action, the open courts provision does not apply to the restriction placed on the DTPA by the Veterinary Licensing Act.[24] Consequently, we overrule the Downings' second point of error.

The Clinic requests damages under rule 84 of the Texas Rules of Appellate Procedure. According to that rule, Appellees are entitled to damages against Appellants when an appeal has been taken "for delay and without sufficient cause." Because we find that the Downings's appeal was taken without unnecessary delay and with sufficient cause, we deny the Clinic's request for damages.

We affirm the summary judgment.

---

20. *See Haddock v. Arnspiger,* 793 S.W.2d 948, 951 (Tex.1990).

21. Tex.Rev.Civ.Stat.Ann. art. 8890 (Vernon Pamph.1996).

22. *Id.* § 18C.

23. Tex. Const. art. I, § 13.

24. *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 499 (Tex.1995).