**Bill McGEE, D.V.M., Jeff Williams, D.V.M., and Bridgeport Animal Hospital, PLLC, Appellants,**

v.

**Carl SMITH, Appellee.**

**No. 2–02–162–CV.**

Court of Appeals of Texas, Fort Worth.

May 1, 2003.

* This paragraph appeared only in the affidavit supporting the warrant to search appellant's car.

Brown, Pruitt, Peterson & Wamsganss, P.C., Donald A. Ferrill, Fort Worth, for appellants.

Robert J. Myers, Austin, The Myers Law Firm, Randy S. Myers, Fort Worth, for appellee.

PANEL A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

Bill McGee, D.V.M., Jeff Williams, D.V.M., and Bridgeport Animal Hospital, PLLC, appeal the trial court's judgment awarding Carl Smith $45,000 in damages plus prejudgment interest for their negligence in the treatment of Smith's foal. In one issue, appellants contend that there was no evidence to support the judgment because Smith failed to present expert testimony regarding negligence and causation. We will reverse and render a judgment for appellants.

On or about May 21, 2000, Smith's foal sustained a four-centimeter cut on its left, rear leg, which left the bone exposed. Dr. Williams, a licensed veterinarian, treated the wound, prescribed oral antibiotics, and recommended that the foal be rechecked in three days. Because Smith was going out of town for the Memorial Day weekend, he left the foal and a mare in the care of Dr. Williams at the Bridgeport Animal Hospital.

On May 26, 2000, Dr. Williams switched the foal to a once-a-day formulation of the same antibiotic he had previously prescribed. At approximately 8:00 p.m. on May 29, 2000, a technician called the veterinarian on call, Dr. McGee, to the clinic because the foal was exhibiting colic symptoms. Dr. McGee treated the foal with an antacid and an analgesic for what he believed to be ulcers. The foal seemed to improve; however, because it exhibited mild muscle cramps, he administered a drug for sedation. He observed the animal for approximately three hours and then, convinced the animal was normal, he left the clinic. The next morning, an employee found the foal dead and the mare visibly upset and sweating.

The day of the foal's death, Dr. Williams performed a necropsy on it to determine the cause of death. According to the necropsy report, Dr. Williams determined that the foal had died of endotoxic shock, a syndrome caused by a reaction to the antibiotic. The antibiotic killed the good bacteria in the foal's intestinal tract, thereby allowing the bad bacteria to proliferate. Ultimately, the animal suffered cardiovascular collapse resulting in a heart attack.

When the mare returned home, Smith noticed that it had lost a significant amount of weight and showed signs of shock. In addition, the mare's "udder was dry." Believing that appellants' failure to properly feed and water the animals had caused the death of the foal and the deterioration of the mare, Smith filed the underlying suit. Smith alleged that appellants had committed negligence, fraud, negligent misrepresentation, breach of contract, and spoliation of evidence. The case was tried

to a jury. After Smith rested, the trial court granted appellants' motion for directed verdict on the breach of contract and negligent misrepresentation claims.

The trial court submitted the negligence claim to the jury over appellants' objections, but it refused to submit a spoliation instruction. After the jury returned a verdict for Smith, appellants moved for a judgment notwithstanding the verdict. The trial court denied the motion and rendered a judgment on the verdict.

 In one point, appellants contend that there is no evidence to support the judgment because Smith failed to present expert testimony that appellants were negligent and that their negligence proximately caused the foal's death. In determining a "no-evidence" issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cazarez*, 937 S.W.2d at 450; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996).

 This court has held that veterinarian negligence cases are to be analyzed under the same standard applied to physicians and surgeons in medical malpractice cases. *Downing v. Gully*, 915 S.W.2d 181, 183 (Tex.App.-Fort Worth 1996, writ denied). In a medical malpractice action, expert testimony is required to prove neg-

ligence unless the form or mode of treatment is a matter of common knowledge, or the matter is within the experience of a layperson. *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex.1977); *Shook v. Herman*, 759 S.W.2d 743, 747 (Tex.App.-Dallas 1988, writ denied). Lay witness testimony regarding negligence and proximate cause has no probative force. *Flores v. Ctr. for Spinal Evaluation & Rehab.*, 865 S.W.2d 261, 264 (Tex.App.-Amarillo 1993, no writ); *Westerlund v. Naaman*, 833 S.W.2d 725, 729 (Tex.App.-Houston [1st Dist.] 1992, no writ).

 Thus, Smith had the burden to establish by expert testimony: (1) the applicable standard of care; (2) the facts that show appellants deviated from that standard, and (3) that the deviation caused the foal's death.[1] *See Downing*, 915 S.W.2d at 184.

 In the present case, Smith presented no expert testimony whatsoever. To prove that the foal died from malnourishment, he relied on his own testimony and that of his father-in-law. Although both men had been involved in the horse industry for many years, neither was qualified as an expert in veterinary medicine. The only expert testimony was that of appellants' expert. Based on a review of the foal's medical records, appellants' expert testified that the foal was treated appropriately in light of the clinical signs it was showing. He stated that mildly colicky foals, much like the one in this case, often respond to analgesic therapy and do not require further treatment. The fact that the foal's membranes were still pink and

1. The dissent incorrectly characterizes this as an "ordinary negligence" case. Dissenting Op. at 728. The only issues submitted to the jury were veterinary negligence issues. Although Smith requested that the jury be charged on ordinary negligence, his request was denied. Smith does not complain of the

charge in this appeal. Therefore, contrary to the dissent's misunderstanding of the nature of this case, we must review the sufficiency of the evidence under a veterinary negligence standard, not an ordinary negligence standard.

that it continued to nurse after Dr. McGee's treatment indicated to him that the clinical problem was not extremely severe. After reviewing the necropsy results, he concurred with Dr. Williams' determination that the likely cause of death was endotoxic shock. Further, he also stated that the stress of losing the foal could cause the mare to sweat, lose weight, and to not "let her milk down." This expert testimony conclusively establishes that appellants were not negligent. Accordingly, we sustain appellants' point and reverse and render a take-nothing judgment for appellants.

DAUPHINOT, J., filed a dissenting opinion.

LEE ANN DAUPHINOT, Justice, dissenting.

I must respectfully dissent from the majority opinion.

The majority correctly states,

Believing that appellants' failure to *properly feed and water* the animals had caused the death of the foal ... Smith filed the underlying suit.[1]

The majority also correctly states,

In a medical malpractice action, expert testimony is required to prove negligence unless the form or mode of treatment is a matter of common knowledge, or the matter is within the experience of a layperson.[2]

The problem, as I see it, is that the majority has applied the medical malpractice standard of proof to an ordinary negligence cause of action. The feeding and watering of animals left in your care is not medical treatment. If the foal had been a human child left with a relative, failure to feed and provide liquids to the child would not give rise to a medical malpractice cause of action, even though that relative was a physician.

In a single footnote, the majority addresses "the dissent's misunderstanding of the nature of this case." The majority is correct. I do not understand, from the majority's opinion, what converts this case from an ordinary negligence case based on failure to feed and water an animal over a hot, three-day weekend into a veterinary medical malpractice case. Does the majority claim that feeding and watering are medical treatment, or does the majority contend that a case becomes a veterinary medical malpractice case every time a doctor of veterinary medicine is sued?

This court has held that veterinary malpractice cases are to be analyzed under the standard applied to physicians and surgeons in medical malpractice cases.[3] We did not hold, however, that every case involving a veterinarian becomes a medical malpractice case anymore than every case involving a physician or surgeon becomes a medical malpractice case under the Texas Medical Liability and Insurance Improvement Act.

Additionally, this court has expressly held that veterinarians are neither "physicians" nor "health care providers."[4]

"Practicing medicine" means the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any sys-

1. Maj. Op. at 726 (emphasis added).

2. *Id.* at 727.

3. *Downing v. Gully*, 915 S.W.2d 181, 183 (Tex.App.-Fort Worth 1996, writ denied).

4. *Neasbitt v. Warren*, 22 S.W.3d 107, 111–12 (Tex.App.-Fort Worth 2000, no pet.) (holding "veterinarians" are not "physicians" within the plain meaning of Texas Medical Liability and Insurance Improvement Act, which requires posting of bonds when filing health care liability claims, and, thus, the Act does not apply to veterinarians).

tem or method, or the attempt to effect cures of those conditions, by a person who:

> (A) publicly professes to be a physician or surgeon; or
>
> (B) directly or indirectly charges money or other compensation for those services.[5]

This court has distinguished the practice of medicine from the practice of veterinary medicine by pointing out:

> At the time the Legislature enacted article 4590i, a different statute, article 8890 of the Texas Revised Civil Statutes, governed the practice of veterinary medicine. Section 2(1) of article 8890 defined "veterinarian" as "any person who is licensed to practice Veterinary Medicine by the Texas State Board of Veterinary Medical Examiners," and section 2(2)(A) defined the "practice of Veterinary Medicine" as "the diagnosis, treatment ... or prevention of *animal* disease...." Although article 8890 was recently repealed and recodified as Chapter 801 of the Texas Occupation Code, this definition of a "veterinarian" remains unchanged.[6]

Just as a cause of action against a surgeon or physician is not a "health care liability claim" when the basis for the cause of action is ordinary negligence rather than a breach of an accepted standard of safety within the health care industry,[7] a claim of ordinary negligence against a veterinarian or a veterinary hospital is not a claim of veterinary malpractice.

Because the majority applies the veterinary malpractice standard of proof and analysis to an ordinary negligence claim without explaining what caused the metamorphosis of the ordinary negligence

cause of action contained in Appellee's pleadings into a veterinary medical malpractice case, I must dissent. Nowhere does Appellee plead veterinary medical malpractice, nor did Appellee offer evidence of veterinary medical malpractice. Indeed, the only possible evidence of veterinary medical malpractice was offered by Appellants as a defense. Their position was that the foal died not as a result of failure to feed and water the animals but as the result of their medical treatment of the foal.

The majority reverses the jury verdict in Appellee's favor and renders a take-nothing judgment on the basis that there was no evidence of veterinary medical malpractice. It would be helpful if the majority would explain why Appellee is required to prove a cause of action never pled. Because the majority opinion answers none of these questions, I must respectfully dissent.

---

**5.** TEX. OCC.CODE ANN. § 151.002(a)(13) (Vernon 2003); *see Neasbitt,* 22 S.W.3d at 111.

**6.** *Neasbitt,* 22 S.W.3d at 111 (interpreting TEX. OCC.CODE ANN. §§ 801.001–.507).

**7.** *Rogers v. Crossroads Nursing Serv., Inc.,* 13 S.W.3d 417, 419–20 (Tex.App.-Corpus Christi 1999, no pet.).