COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-162-CV
 
BILL MCGEE, D.V.M., JEFF WILLIAMS,                                                   
APPELLANTS
D.V.M., AND BRIDGEPORT ANIMAL
HOSPITAL, PLLC
V.
CARL SMITH                                                                                          
APPELLEE
------------
FROM THE 271ST DISTRICT COURT OF WISE COUNTY
------------
OPINION
------------
Bill McGee, D.V.M., Jeff Williams, D.V.M., and Bridgeport Animal Hospital,
PLLC, appeal the trial court's judgment awarding Carl Smith $45,000 in damages
plus prejudgment interest for their negligence in the treatment of Smith's foal.
In one issue, appellants contend that there was no evidence to support the
judgment because Smith failed to present expert testimony regarding negligence
and causation. We will reverse and render a judgment for appellants.
On or about May 21, 2000, Smith's foal sustained a four-centimeter cut on its
left, rear leg, which left the bone exposed. Dr. Williams, a licensed
veterinarian, treated the wound, prescribed oral antibiotics, and recommended
that the foal be rechecked in three days. Because Smith was going out of town
for the Memorial Day weekend, he left the foal and a mare in the care of Dr.
Williams at the Bridgeport Animal Hospital.
On May 26, 2000, Dr. Williams switched the foal to a once-a-day formulation
of the same antibiotic he had previously prescribed. At approximately 8:00 p.m.
on May 29, 2000, a technician called the veterinarian on call, Dr. McGee, to the
clinic because the foal was exhibiting colic symptoms. Dr. McGee treated the
foal with an antacid and an analgesic for what he believed to be ulcers. The
foal seemed to improve; however, because it exhibited mild muscle cramps, he
administered a drug for sedation. He observed the animal for approximately three
hours and then, convinced the animal was normal, he left the clinic. The next
morning, an employee found the foal dead and the mare visibly upset and
sweating.
The day of the foal's death, Dr. Williams performed a necropsy on it to
determine the cause of death. According to the necropsy report, Dr. Williams
determined that the foal had died of endotoxic shock, a syndrome caused by a
reaction to the antibiotic. The antibiotic killed the good bacteria in the
foal's intestinal tract, thereby allowing the bad bacteria to proliferate.
Ultimately, the animal suffered cardiovascular collapse resulting in a heart
attack.
When the mare returned home, Smith noticed that it had lost a significant
amount of weight and showed signs of shock. In addition, the mare's "udder
was dry." Believing that appellants' failure to properly feed and water the
animals had caused the death of the foal and the deterioration of the mare,
Smith filed the underlying suit. Smith alleged that appellants had committed
negligence, fraud, negligent misrepresentation, breach of contract, and
spoliation of evidence. The case was tried to a jury. After Smith rested, the
trial court granted appellants' motion for directed verdict on the breach of
contract and negligent misrepresentation claims.
The trial court submitted the negligence claim to the jury over appellants'
objections, but it refused to submit a spoliation instruction. After the jury
returned a verdict for Smith, appellants moved for a judgment notwithstanding
the verdict. The trial court denied the motion and rendered a judgment on the
verdict.
In one point, appellants contend that there is no evidence to support the
judgment because Smith failed to present expert testimony that appellants were
negligent and that their negligence proximately caused the foal's death. In
determining a "no-evidence" issue, we are to consider only the
evidence and inferences that tend to support the finding and disregard all
evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d
749, 754 (Tex. 2001); Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d
444, 450 (Tex. 1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d
660, 661 (1951). Anything more than a scintilla of evidence is legally
sufficient to support the finding. Cazarez, 937 S.W.2d at 450;
Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).
This court has held that veterinarian negligence cases are to be analyzed
under the same standard applied to physicians and surgeons in medical
malpractice cases. Downing v. Gully, 915 S.W.2d 181, 183 (Tex.
App.--Fort Worth 1996, writ denied). In a medical malpractice action, expert
testimony is required to prove negligence unless the form or mode of treatment
is a matter of common knowledge, or the matter is within the experience of a
layperson. Hood v. Phillips, 554 S.W.2d 160, 165-66 (Tex. 1977); Shook
v. Herman, 759 S.W.2d 743, 747 (Tex. App.--Dallas 1988, writ denied). Lay
witness testimony regarding negligence and proximate cause has no probative
force. Flores v. Ctr. for Spinal Evaluation & Rehab., 865 S.W.2d
261, 264 (Tex. App.--Amarillo 1993, no writ); Westerlund v. Naaman, 833
S.W.2d 725, 729 (Tex. App.--Houston [1st Dist.] 1992, no writ).
Thus, Smith had the burden to establish by expert testimony: (1) the
applicable standard of care; (2) the facts that show appellants deviated from
that standard, and (3) that the deviation caused the foal's death.(1)
See Downing, 915 S.W.2d at 184.
In the present case, Smith presented no expert testimony whatsoever. To prove
that the foal died from malnourishment, he relied on his own testimony and that
of his father-in-law. Although both men had been involved in the horse industry
for many years, neither was qualified as an expert in veterinary medicine. The
only expert testimony was that of appellants' expert. Based on a review of the
foal's medical records, appellants' expert testified that the foal was treated
appropriately in light of the clinical signs it was showing. He stated that
mildly colicky foals, much like the one in this case, often respond to analgesic
therapy and do not require further treatment. The fact that the foal's membranes
were still pink and that it continued to nurse after Dr. McGee's treatment
indicated to him that the clinical problem was not extremely severe. After
reviewing the necropsy results, he concurred with Dr. Williams' determination
that the likely cause of death was endotoxic shock. Further, he also stated that
the stress of losing the foal could cause the mare to sweat, lose weight, and to
not "let her milk down." This expert testimony conclusively
establishes that appellants were not negligent. Accordingly, we sustain
appellants' point and reverse and render a take-nothing judgment for appellants.
 
                                                                       
JOHN CAYCE
                                                                       
CHIEF JUSTICE
 
PANEL A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.
               
DAUPHINOT, J. filed a dissenting opinion.
 
DELIVERED: May 1, 2003

COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-162-CV
 
BILL MCGEE, D.V.M., JEFF WILLIAMS,                                                        
APPELLANTS
D.V.M., AND BRIDGEPORT ANIMAL
HOSPITAL, PLLC
V.
CARL SMITH                                                                                              
APPELLEE
------------
FROM THE 271ST DISTRICT COURT OF WISE COUNTY
------------
DISSENTING OPINION
------------
I must respectfully dissent from the majority opinion.
The majority correctly states,

 Believing that appellants' failure to properly feed and water the
 animals had caused the death of the foal . . . Smith filed the underlying
 suit.(2)

The majority also correctly states,

 In a medical malpractice action, expert testimony is required to prove
 negligence unless the form or mode of treatment is a matter of common
 knowledge, or the matter is within the experience of a layperson.(3)

The problem, as I see it, is that the majority has applied the medical
malpractice standard of proof to an ordinary negligence cause of action. The
feeding and watering of animals left in your care is not medical treatment. If
the foal had been a human child left with a relative, failure to feed and
provide liquids to the child would not give rise to a medical malpractice cause
of action, even though that relative was a physician.
In a single footnote, the majority addresses "the dissent's
misunderstanding of the nature of this case." The majority is correct. I do
not understand, from the majority's opinion, what converts this case from an
ordinary negligence case based on failure to feed and water an animal over a
hot, three-day weekend into a veterinary medical malpractice case. Does the
majority claim that feeding and watering are medical treatment, or does the
majority contend that a case becomes a veterinary medical malpractice case every
time a doctor of veterinary medicine is sued?
This court has held that veterinary malpractice cases are to be analyzed
under the standard applied to physicians and surgeons in medical malpractice
cases.(4)   We did not hold, however,
that every case involving a veterinarian becomes a medical malpractice case
anymore than every case involving a physician or surgeon becomes a medical
malpractice case under the Texas Medical Liability and Insurance Improvement
Act.
Additionally, this court has expressly held that veterinarians are neither
"physicians" nor "health care providers."(5)

 "Practicing medicine" means the diagnosis, treatment, or offer to
 treat a mental or physical disease or disorder or a physical deformity or
 injury by any system or method, or the attempt to effect cures of those
 conditions, by a person who:
 
         (A) publicly professes to be a
 physician or surgeon; or
         (B) directly or indirectly
 charges money or other compensation for those services.(6)
 

This court has distinguished the practice of medicine from the practice of
veterinary medicine by pointing out:

         At the time the Legislature
 enacted article 4590i, a different statute, article 8890 of the Texas Revised
 Civil Statutes, governed the practice of veterinary medicine. Section 2(1) of
 article 8890 defined "veterinarian" as "any person who is
 licensed to practice Veterinary Medicine by the Texas State Board of
 Veterinary Medical Examiners," and section 2(2)(A) defined the
 "practice of Veterinary Medicine" as "the diagnosis, treatment
 ... or prevention of animal disease...." Although article 8890
 was recently repealed and recodified as Chapter 801 of the Texas Occupation
 Code, this definition of a "veterinarian" remains unchanged.(7)

Just as a cause of action against a surgeon or physician is not a
"health care liability claim" when the basis for the cause of action
is ordinary negligence rather than a breach of an accepted standard of safety
within the health care industry,(8) a
claim of ordinary negligence against a veterinarian or a veterinary hospital is
not a claim of veterinary malpractice.
Because the majority applies the veterinary malpractice standard of proof and
analysis to an ordinary negligence claim without explaining what caused the
metamorphosis of the ordinary negligence cause of action contained in Appellee's
pleadings into a veterinary medical malpractice case, I must dissent. Nowhere
does Appellee plead veterinary medical malpractice, nor did Appellee offer
evidence of veterinary medical malpractice. Indeed, the only possible evidence
of veterinary medical malpractice was offered by Appellants as a defense. Their
position was that the foal died not as a result of failure to feed and water the
animals but as the result of their medical treatment of the foal.
The majority reverses the jury verdict in Appellee's favor and renders a
take-nothing judgment on the basis that there was no evidence of veterinary
medical malpractice. It would be helpful if the majority would explain why
Appellee is required to prove a cause of action never pled. Because the majority
opinion answers none of these questions, I must respectfully dissent.
 
                                                                   
LEE ANN DAUPHINOT
                                                                   
JUSTICE
 
DELIVERED: May 1, 2003

Majority Opinion EndNotes:
1.  The dissent incorrectly characterizes this as an
"ordinary negligence" case. Dissenting Op. at 2. The only issues
submitted to the jury were veterinary negligence issues. Although Smith
requested that the jury be charged on ordinary negligence, his request was
denied. Smith does not complain of the charge in this appeal. Therefore,
contrary to the dissent's misunderstanding of the nature of this case, we must
review the sufficiency of the evidence under a veterinary negligence standard,
not an ordinary negligence standard.
Dissenting Opinion EndNotes:
2.  Maj. Op. at 3 (emphasis added).
3.  Id. at 4.
4.  Downing v. Gully, 915 S.W.2d 181, 183
(Tex. App.--Fort Worth 1996, writ denied).
5. Neasbitt v. Warren, 22 S.W.3d 107, 111-12
(Tex. App.--Fort Worth 2000, no pet.) (holding "veterinarians" are not
"physicians" within the plain meaning of Texas Medical Liability and
Insurance Improvement Act, which requires posting of bonds when filing health
care liability claims, and, thus, the Act does not apply to veterinarians).
6.  Tex. Occ. Code Ann. § 151.002(a)(13) (Vernon
2003); see Neasbitt, 22 S.W.3d at 111.
7.  Neasbitt, 22 S.W.3d at 111 (interpreting
Tex. Occ. Code Ann. §§ 801.001-.507).
8.  Rogers v. Crossroads Nursing Serv., Inc.,
13 S.W.3d 417, 419-20 (Tex. App.--Corpus Christi 1999, no pet.).