

NUMBER 13-12-00519-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JENA GONZALEZ,                                                                          Appellant,

v.

SOUTH TEXAS VETERINARY
ASSOCIATES, INC.,                                                                      Appellee.

## On appeal from the County Court at Law Number 5
## of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Perkes**
**Memorandum Opinion by Justice Benavides**

This is a veterinary malpractice case. By three issues, which we consolidate into one, appellant, Jena Gonzalez, appeals the trial court's granting of appellee South Texas Veterinary Associates, Inc.'s ("STVA") no-evidence and traditional motions for summary judgment. We reverse and remand.

# I.  BACKGROUND

Gonzalez filed suit against STVA following the death of her cat, "Kitty Kat," who was euthanized in February 2011 allegedly due to a medical condition known as vaccine-associated sarcoma.

In October 2003, Gonzalez acquired Kitty Kat and did not know the cat's medical or vaccination history.  Gonzalez described Kitty Kat as an "indoor/outdoor" cat.  On two separate occasions, in December 2008 and March 2010, Gonzalez took Kitty Kat to STVA for treatment by David Shaffer, D.V.M.  According to Gonzalez, Dr. Shaffer vaccinated Kitty Kat, including a vaccination known as "adjuvanted feline leukemia vaccine."  On October 11, 2010, Gonzalez returned to STVA and presented Kitty Kat, who had developed a golf-ball-sized mass that contained a quarter-sized ulceration which was draining "matter" on Kitty Kat's right rear leg.  According to Gonzalez, Dr. Shaffer diagnosed the cat with an infection, prescribed an antibiotic for treatment, and instructed Gonzalez to return if Kitty Kat's symptoms did not improve.

Gonzalez alleges that Kitty Kat's symptoms did not improve, so Gonzalez took Kitty Kat to another veterinary clinic, Baldwin and Crosstown Animal Clinic,[1] on October 16, 2010.  At the clinic, veterinarian Dr. Platt[2] diagnosed Kitty Kat with vaccine-associated sarcoma.  On October 18, 2010, another veterinarian, Dr. Guzeldere[3], examined Kitty Kat, aspirated Kitty Kat's lesion, and concurred in the diagnosis of vaccine-associated sarcoma.  Following these diagnoses, Kitty Kat

---

[1] According to Gonzalez, she attempted to schedule a follow-up appointment with Dr. Shaffer, but was unable to do so due to "unavailability."

[2] Dr. Platt's first name is not apparent from the record.

[3] Dr. Guzeldere's first name is also not apparent from the record.

2

underwent two surgeries, including the amputation of the right hind limb, and chemotherapy. Gonzalez states that Kitty Kat was euthanized on February 14, 2011 as a result of complications from the vaccine-associated sarcoma.

Gonzalez, acting pro se, initially filed suit in Nueces County small claims court against STVA and alleged that STVA: (1) failed to inform her of the risk of vaccine-associated sarcoma; (2) failed to adhere to feline vaccination protocols; and (3) failed to properly diagnose vaccine-associated sarcoma. Gonzalez sought damages in the amount of $6,858.52, plus court costs. The justice court granted STVA's motion for directed verdict and ordered a take-nothing judgment. Gonzalez, however, filed a de novo appeal to the county court. See TEX. CIV. PRAC. & REM. CODE ANN. § 51.001 (West 2008).

Discovery included the oral depositions of Dr. Shaffer, fellow STVA veterinarian Darrell Ferris, D.V.M, STVA retained testifying expert Alan Garett, D.V.M., and Gonzalez's retained testifying expert, Robert "Bob" Rogers, D.V.M.

STVA eventually filed no-evidence and traditional motions for summary judgment on all of Gonzalez's claims, as well as a traditional motion for summary judgment on its counterclaim for sanctions against Gonzalez for continued prosecution and bringing "groundless" claims in bad faith or for the purpose of harassment. See TEX. R. CIV. P. 13; 215.2(b). Gonzalez and STVA filed their respective responses, replies, and sur-replies to address the pending motions. Gonzalez's first amended petition added claims for breach of contract and negligent misrepresentation. STVA filed a motion to dismiss these new claims.

3

The trial court made the following relevant rulings:

(1) STVA's motion to dismiss Gonzalez's breach of contract and negligent misrepresentation claims was granted;

(2) STVA's counterclaim and motion for sanctions against Gonzalez was denied; and

(3) STVA's no-evidence and traditional motions for summary judgment were granted;

This appeal followed.

## II.    ANALYSIS

By three issues, which we have consolidated into one, *see* TEX. R. APP. P. 47.1, Gonzalez asserts that the trial court erred by granting STVA's no-evidence and traditional motions for summary judgment.[4]

### A.  Standard of Review and Applicable Law

We review a trial court's summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* (citing *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002)). When a party moves for a no-evidence summary judgment and a traditional summary judgment, we first

---

[4] Gonzalez also asserts that the trial court erred by denying her motion for new trial. However, Gonzalez did not brief this issue; therefore, it is waived. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Furthermore, in her reply brief, Gonzalez attempts to raise seven additional issues. However, though a reply brief may address any matter in the appellee's brief, *see id.* R. 38.3, it may not be used to present new issues that an appellant did not raise in its opening brief. *See U.S. Lawns, Inc. v. Castillo*, 347 S.W.3d 844, 849 (Tex. App.—Corpus Christi 2011, pet. denied). Accordingly, these issues, which are not responsive to any matter raised in STVA's appellee's brief and were not raised in Gonzalez's initial brief, will not be considered.

review the trial court's grant under the no-evidence standards of Rule 166a(i). *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the non-movant meets her burden under Rule 166a(i), then we analyze whether the movant satisfied her Rule 166a(c) burden. *See id.*

A no-evidence summary judgment under Rule 166a(i) is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003) (internal citations omitted). Accordingly, we review the evidence in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). Thus, a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to each element of its claim. *Id.* Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

5

To obtain a traditional summary judgment, a movant must either negate at least one element of the plaintiff's theory of recovery or plead and conclusively establish each element of an affirmative defense. *See* TEX. R. CIV. P. 166a(c); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Once the movant produces sufficient evidence to establish the right to summary judgment, the nonmovant must present evidence sufficient to raise a fact issue. *Centeq Realty, Inc.*, 899 S.W.2d at 197. When deciding whether a disputed, material fact issue precludes summary judgment, we take as true evidence favorable to the nonmovant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in favor of the non-movant. *City of Keller*, 168 S.W.3d at 825 & 827; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985).

Here, we apply the medical standard of negligence to a claim of veterinary negligence. *See Downing v. Gully*, 915 S.W.2d 181, 184 (Tex. App.—Fort Worth 1996, writ denied) (setting forth the elements for the plaintiff to prove as: "(1) the applicable standard of care; (2) the treatment and services provided to the patient and the reason for that treatment; and (3) that the treatment and services failed to comply with the standard of care used by other reasonably prudent veterinary care providers in the same or similar circumstances").

The *Downing* Court further explained that, like in medical negligence cases, the courts are guided solely by expert opinion. *Id.* (citing *Armbruster v. Mem'l Sw. Hosp.*, 857 S.W.2d 938, 941 (Tex. App.—Houston [1st Dist.] 1993, no writ)). A summary judgment may be based on an expert's uncontroverted testimony if the testimony is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies,

6

and capable of being readily controverted. *See* TEX. R. CIV. P. 166a(c). An expert cannot merely state he knows the standard of care and conclude that it was or was not met. *Armbruster*, 857 S.W.2d at 941. Instead, the expert must state the standard and explain how it was not met. *See id.*

In this case, Gonzalez alleged in her live petition that STVA failed to: (1) inform her of vaccine-associated sarcoma risk; (2) adhere to feline vaccination protocols; and (3) properly diagnose vaccine-associated sarcoma in Kitty Kat, which resulted in the loss of her life.

## B. Discussion

### 1. No-Evidence Summary Judgment

STVA asserted in its no-evidence motion that Gonzalez did not bring forth any evidence as to the relevant standard of care. In response to STVA's motion, Gonzalez cited testimony from the depositions of Dr. Ferris, Dr. Shaffer, and Dr. Garett, as well as an expert report by her retained testifying expert witness, Dr. Rogers.

### (a) Dr. Ferris, Dr. Shaffer, and Dr. Garett

The respective testimonies of Dr. Ferris, Dr. Shaffer, and Dr. Garett were not sufficiently developed to establish the appropriate standard of care in this case because while each veterinarian stated the applicable standard of care, none of them stated how the standard was not met in this case. *See Armbruster*, 857 S.W.2d at 941. Accordingly, Gonzalez cannot rely on this evidence to defeat STVA's no-evidence motion for summary judgment.

**(b) Dr. Robert "Bob" Rogers**

Next, we consider the document attached as Exhibit H to Gonzalez's response to STVA's no-evidence summary judgment motion. This document is identified as an "expert report" and not an affidavit. Furthermore, Gonzalez's Exhibit H does not contain a statement purporting to make the document an affidavit as defined by the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 312.011 (West 2005) (defining affidavit as "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office"). However, the general rules of error preservation apply to this situation, and the record shows that STVA did not complain to the trial court about whether it could consider Dr. Rogers's unsworn expert report as evidence. *See* TEX. R. APP. P. 33.1(a); *Mansions in the Forest, L.P. v. Montgomery County*, 365 S.W.3d 314, 317 (Tex. 2012) (holding that the general rules of error preservation apply to unsworn affidavits in the summary judgment context). Moreover, defects in the form of an affidavit will not be grounds for reversal or affirmance unless specifically pointed out by objection by an opposing party with an opportunity, but refusal, to amend. *See* TEX. R. CIV. P. 166a(f). However, the failure of an affidavit to be made on personal knowledge or to specify how the affiant had personal knowledge of the facts asserted is a defect in substance, not form, and is not waived by a failure to object. *See Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. ref'd). STVA asserted a specific objection to Dr. Rogers's deposition testimony, stating that he has "no knowledge" of the standard of care of small animal veterinarians practicing in Corpus Christi, Texas. However, no objections were made to the form of Dr. Rogers's expert report, and we

8

hold that any such objections were waived. *See* Tᴇx. R. Cɪᴠ. P. 166a(f). Furthermore, STVA's arguments on appeal complain of defects in the form of Dr. Rogers's expert report—i.e. that it was unsworn and, thus, incompetent evidence—and cannot be raised for the first time on appeal. *See Mansions in the Forest*, 365 S.W.3d at 317.

Finally, even if we treat STVA's objections to Dr. Rogers's expert report as substantive and therefore, not waived, we are not persuaded by STVA's argument that Dr. Rogers's testimony is incompetent because he testified that he did not know the specific standards of care in Corpus Christi, Texas pursuant to the locality rule. The purpose of the locality rule is to prevent unrealistic comparisons between the standards of practice in communities where resources and facilities might vastly differ. *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 366 (Tex. 1987). Aside from generally invoking the locality rule, STVA does not assert how its application in this case satisfies the rule's purpose or that the standards of practice in Spring, Texas, where Dr. Rogers practices, is "vastly differ[ent]" from the standards of practice in Corpus Christi, where STVA is located. *See Birchfield*, 747 S.W.2d at 366; *see also Hall v. Huff*, 957 S.W.2d 90, 101 (Tex. App.—Texarkana 1997, pet. denied) (stating that, while the locality rule has not been totally abrogated, the "evolution of Texas cases" as well as the "universality of education, training, testing, and travel in the realm of medical treatment and a right to expect the same basic quality of care" have made its use less applicable). Accordingly, we narrowly conclude that the locality rule does not apply to the facts of this case. Therefore, because Gonzalez's Exhibit H was entered into evidence without objection as to its form, and because Dr. Rogers's testimony about not knowing the specific standards of care in Corpus Christi has no bearing on this case absent the application of

9

the locality rule, we consider his report for purposes of this appeal.

Dr. Rogers's 14-page expert report is divided into various sections. One section labeled "Curriculum Vitae" lays out Dr. Rogers's credentials, including: (1) that he is a 1975 graduate of Texas A&M University's College of Veterinary Medicine; (2) that he has been in "small animal" veterinary practice for 36 years; and (3) that he has personal knowledge about animal vaccinations and adverse events that arise from vaccinations. Next, Dr. Rogers writes the following in his report:

> I have reviewed the medical records of "Kitty Kat" belonging to Mrs. Jena Gonzales.
>
> The evidence and scientific data show that Dr. Shaffer, without informing the client of the risk vs. the benefit of the vaccinations administered, and without diligence and care in the selection of the safest and most effective vaccine, was negligent in the treatment and vaccination of "Kitty Kat" belonging to Jenna [sic] and Arnulfo Gonzales. Dr. Shaffer did not adhere to the standard of care by failing to select the safest and most effective vaccine. Dr. Shaffer did not adhere to the standard of care as directed by the Texas State Board of Veterinary Medical Examiners in the lack of informed consent and in the decisions for vaccinations he gave to "Kitty Kat." Dr. Shaffer's lack of informed consent and negligence caused the death of "Kitty Kat" by subjecting this cat to the subsequent development of a vaccine associated sarcoma.
>
> A vaccine associated sarcoma (VAS) is a rapid growing and fatal form of cancer in cats stemming from inflammation. Because of adverse events like Vaccine Associated Sarcomas, between the years of 1996 and 1998 Texas A&M University and all 27 Colleges of Veterinary Medicine in the U.S. revised their vaccination protocols for small animals. In 1996[,] the Vaccine Associated Sarcoma Task Force was formed to make recommendations for the prevention of and treatment of VAS.

Later in the report, Dr. Rogers defines informed consent as it relates to the vaccinations

of small animals:

> A reasonable Veterinarian should disclose to the client the risk of the disease being vaccinated against along with any known risk that may result from the vaccination. When the vaccination involves the risk of inherently serious harm to the animal such as a Vaccine Associated Sarcoma[,] it is

10

the Veterinarian's duty to inform the client of this potential serious complication. The Veterinarian should also inform the client as to any steps they can take to minimize the risks as well as any alternative safer vaccine and any alternative to vaccination. The failure to provide and obtain informed consent is in itself an act of negligence.

Dr. Rogers further opined that Dr. Shaffer's failure to obtain informed consent also violated the "vaccination protocols" as specified by the Texas State Board of Veterinary Medical Examiners in 2005. Additionally, Dr. Rogers stated that Dr. Shaffer was negligent in failing to inform Gonzalez: (1) of the risk of vaccine-associated sarcoma; and (2) that to minimize risk of vaccine-associated sarcoma, the American Veterinarian Medical Association's Vaccine Associated Sarcoma Task Force, the Association of Feline Practitioners, and the Texas A&M University Small Animal Teaching Hospital recommend that a veterinarian "look for a lump at the vaccination site and have it removed if it is larger than 2 cm., grows, or fails to go away after 3 months, before it could become cancerous."

After examining the evidence in the light most favorable to Gonzalez and disregarding all contrary evidence and inferences, we conclude that Gonzalez brought forth more than a scintilla of probative evidence establishing the relevant standard of care to prove her malpractice claims. *See City of Keller*, 168 S.W.3d at 810; *see also* TEX. R. CIV. P. 166a(i). In particular, we conclude that Dr. Rogers's letter adequately sets forth the standard of care applicable to this case with regard to the treatment of Kitty Kat, and the trial court erred by granting the no-evidence summary judgment. Because this evidence is sufficient to defeat STVA's no-evidence motion, we now examine whether STVA satisfied its Rule 166a(c) burden. *See Ridgway*, 135 S.W.3d at 600.

11

### *2.* **Traditional Motion for Summary Judgment**

STVA first argues that the evidence conclusively establishes that Dr. Shaffer complied with the applicable standard of care for his treatment of Kitty Kat. In support of this argument, STVA cites a letter from the Texas Board of Veterinary Medical Examiners ("the Board") related to a complaint filed against Dr. Shaffer by Gonzalez to the Board related to the death of Kitty Kat. The pertinent part of the letter states the following:

> Two Board Members, who are both veterinarians, reviewed and evaluated this case. After review of all available documentation and statements, the Board Members could not substantiate any violation of the Veterinarian Licensing Act or any of the Rules of Professional Conduct.
>
> We are closing this case with the notation of "no violation." [ . . . . ]

Relying on this evidence, STVA asserts that the Board's letter establishes as a matter of law that Dr. Shaffer adhered to the applicable standard of care and did not commit veterinary malpractice. We disagree. While this evidence may be relevant to the ultimate disposition of this case and we do not disregard it, we nevertheless hold that it does not conclusively prove that Dr. Shaffer complied with the applicable standard of care in light of Dr. Rogers's report to the contrary. *See* TEX. R. CIV. P. 166a(c). Furthermore, we are not directed to any authority that such findings by the Board are conclusive evidence establishing that a veterinarian adhered to the applicable standard of care. At most, the Board's letter is evidence in support of STVA's position as to which reasonable and fair-minded jurors could ultimately differ in their conclusions in light of all of the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex. 2007) (per curiam).

Finally, STVA relies on a recorded conversation between Dr. Rogers and STVA's retained testifying expert, Dr. Garett, during a professional conference that they both attended in January 2012. A transcript of this conversation was entered into the record. STVA relies upon the following excerpt from the conversation:

DR. GARETT:     Who do you blame? The veterinarian or—or the—or the industry?

DR. ROGERS:     I blame the industry. I don't blame the vet.

DR. GARETT:     Sure. Yeah, I agree.

While we, again, do not disregard this evidence, we cannot conclude that such evidence by itself negates an element of Gonzalez's theory of recovery. *See* TEX. R. CIV. P. 166a(c); *Centeq Realty, Inc.*, 899 S.W.2d at 197. This recorded conversation instead goes to the weight of the evidence and credibility of Dr. Rogers's expert report testimony, which is outside the scope of our review at this stage in the proceedings. *See McCullough v. Godwin*, 214 S.W.3d 793, 800 (Tex. App.—Tyler 2007, no pet.) ("[An appellate court is] not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof.") (quoting *Gulbenkian v. Penn*, 151 Tex. 412, 417, 252 S.W.2d 929, 932 (Tex. 1952)).

Accordingly, after taking as true evidence favorable to the non-movant, indulging every reasonable inference in favor of Gonzalez, and resolving any doubts in favor of Gonzalez, we conclude that STVA did not meet its Rule 166a(c) burden, and the trial court erred by granting STVA's traditional motion for summary judgment. Gonzalez's sole issue on appeal is sustained.

### III. CONCLUSION

We reverse the trial court's order granting STVA's no-evidence and traditional motions for summary judgment and remand this case for further proceedings consistent with this opinion.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
19th day of December, 2013.

14