Glenn NEASBITT and Sally Neasbitt, Appellants,

v.

David P. WARREN, D.V.M., Appellee.

No. 2–99–367–CV.

Court of Appeals of Texas, Fort Worth.

June 15, 2000.

Michael K. Vrana, Leslie G. Martin, MacDonald & Schuble, L.L.P., Dallas, for appellant.

Donald A. Ferrill, D.V.M., Brown, Thompson, Pruitt & Peterson, P.C., Fort Worth, for appellee.

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

## OPINION

ANNE GARDNER, Justice.

The issue in this case is whether the Texas Medical Liability and Insurance Improvement Act (the Act) applies to veterinarians. We hold it does not. We reverse the judgment of the trial court dismissing this cause for want of prosecution under section 13.01(d) of that act. *See* Tex.Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon Supp.2000).

## BACKGROUND

Appellants Glenn and Sally Neasbitt sued Appellee David P. Warren, D.V.M. The Neasbitts alleged that Dr. Warren was a doctor of veterinary medicine and was negligent in his treatment of their Arabian mare, "Khamees," in connection with artificial insemination, resulting in a serious rectal tear that necessitated emergency colostomy surgery and ultimately required the mare to be put to sleep.

The Neasbitts filed suit on March 24, 1999. Section 13.01(a) of article 4590i requires that, in a "health care liability claim," the claimant shall, not less than the 90th day after the date the claim is filed:

(1) file a separate cost bond in the amount of $5,000 for each physician or health care provider named by the claimant in the action;

(2) place cash in an escrow account in the amount of $5,000 for each physician or health care provider named in the action; or

(3) file an expert report for each physician or health care provider with respect to whom a cost bond has not been filed and cash in lieu of the bond has not been

deposited under Subdivision (1) or (2) of this subsection.

*Id.* § 13.01(a).

If the plaintiff fails to comply with that section of the statute, the court "on the motion of the affected physician or health care provider," shall order the plaintiff to file a bond in the amount of $7,500 not later than the twenty-first day after the date of the order. *Id.* § 13.01(b)(1). If the plaintiff fails to comply with that order, "the action shall be dismissed for want of prosecution with respect to the physician or health care provider, subject to reinstatement in accordance with the applicable rules of civil procedure and Subsection (c) of this section." *Id.* § 13.01(b)(2).[1]

On June 25, 1999, Warren filed a motion for cost bond pursuant to section 13.01(b) of article 4590i, alleging that more than ninety days had expired since the Neasbitts had filed suit and that they had not filed a $5,000 cost bond or placed that amount of cash in escrow. The Neasbitts also had not filed a written report by an expert witness regarding the applicable standard of care, how Warren failed to meet that standard, and the causal relationship between the failure and the alleged injury, harm, or damages claimed. *See id.* § 13.01(b).

Warren moved the court for an order requiring the Neasbitts to file a $7,500 cost bond not later than twenty-one days after the date of the order and providing for dismissal of their action for want of prosecution if they failed to comply. On July 23, 1999, the trial court signed an order granting Warren's motion for cost bond and ordering the Neasbitts to file a $7,500 cost bond not later than the twenty-first day after the date of the order. When the Neasbitts failed to file the cost bond within that period, Warren filed a motion to dis-

---

1. Subsection (c) of section 13.01 requires that, before a claim that has been dismissed under subsection (b) may be reinstated, the plaintiff must pay the costs of court incurred by the defendant physician or health care provider and post a $7,500 bond for each defendant physician and health care provider. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(c) (Vernon Supp.2000).

miss for want of prosecution, which the trial court granted on September 3, 1999.

The Neasbitts timely filed a verified "Motion to Reinstate or, in the Alternative, to Amend Order of Dismissal" on October 4, 1999. Specifically, the Neasbitts asserted in that motion that they were not required to comply with the requirements of article 4590i because veterinarians are not "physicians" or "health care providers" and are not protected by the provisions of that act. Alternatively, the Neasbitts sought to comply by attaching an expert affidavit of a veterinarian. In the further alternative, they asked the court to amend its order to include specific findings that the Act applied to Warren and that the sole basis of the dismissal was their failure to file the cost bond.

On October 22, 1999, the trial court signed an order denying the Neasbitts' motion to reinstate. However, the court granted their motion to amend, withdrew its prior order, and entered a new order of dismissal including the requested findings. The Neasbitts timely perfected their appeal.

## DISCUSSION

### I. Applicability of article 4590i to veterinarians

■ We ordinarily review a trial court's dismissal for want of prosecution for an abuse of discretion, but because the applicability of article 4590i to veterinarians is a pure question of law, we review the trial court's ruling de novo. *See Smith v. Babcock & Wilcox Constr. Co.*, 913 S.W.2d 467, 468 (Tex.1995) (denial of a motion to reinstate reviewed for an abuse of discretion); *Burton v. Hoffman*, 959 S.W.2d 351, 353 (Tex.App.—Austin 1998, no pet.) (same); *Martinez v. Lakshmikanth*, 1 S.W.3d 144, 146 (Tex.App.—Corpus Christi 1999, pet. denied) (reviewing question of law *de novo* on appeal from dismissal for want of prosecution); *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989) (holding statutory construction is question of law).

The Neasbitts contend that article 4590i does not apply to veterinarians, pointing out that the Act protects "health care providers" and "physicians," and that nowhere in the definitions of those terms of the Act are veterinarians mentioned. They next point to the concerns and purposes of the Legislature in enacting the Act as manifesting its intent to resolve a health care crisis and to make medical and health care more affordable for people, not animals. Finally, they note that recent decisions have strictly limited the applicability of the Act to persons specifically listed in the definitions.

The cost bond and expert report requirements of section 13.01 of article 4590i expressly apply only "[i]n a health care liability claim." TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(a). A "health care liability claim" is defined as:

a cause of action against a *health care provider* or *physician* for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract.

*Id.* § 1.03(a)(4) (emphasis added). Additionally, the cost bond and expert report requirements imposed by section 13.01 are expressly applicable only as to each "physician" and "health care provider" named in the claimant's action. *Id.* § 13.01(a)-(e).

The term "health care provider" is defined in article 4590i as follows:

"Health care provider" means any person, partnership, professional association, corporation, facility, or institution duly licensed or chartered by the State of Texas to provide health care as a registered nurse, hospital, dentist, podiatrist, pharmacist, or nursing home, or an officer, employee, or agent thereof acting in the course and scope of his employment.

*Id.* § 1.03(a)(3).

Several courts have construed the definition of "health care provider" in section

1.03(a)(3) of article 4590i. *See Grace v. Colorito*, 4 S.W.3d 765, 769 (Tex.App.—Austin 1999, pet. denied) (licensed counselor not "health care provider" since not listed in definition); *Terry v. Barrinuevo*, 961 S.W.2d 528, 530–31 (Tex.App.—Houston [1 st Dist.] 1997, no pet.) (op. on reh'g) (physical therapist not included as "health care provider" since not listed); *Townsend v. Catalina Ambulance Co.*, 857 S.W.2d 791, 796 (Tex.App.—Corpus Christi 1993, no writ) (ambulance companies not included in definition). Each court to address the issue has held that professionals or services not expressly listed in the definition are not included in the Act. *See Grace*, 4 S.W.3d at 769; *Terry*, 961 S.W.2d at 530–31; *Townsend*, 857 S.W.2d at 796.

In *Lenhard v. Butler*, this Court held that a psychologist is not a "health care provider" as defined by the act, relying on the statutory construction rule *expressio unius est exclusion alterius*. 745 S.W.2d 101, 105–06 (Tex.App.—Fort Worth 1988, writ denied). In *Lenhard*, we reasoned that including podiatrists, nurses, dentists, and pharmacists while excluding other professionals such as chiropractors, optometrists, or psychologists was not a mere oversight. *Id.* We concluded that we were precluded from supplying a meaning or word that was intentionally omitted from a statute by the legislature. *See id.*

■ Warren does not disagree with those decisions but contends, instead, that a veterinarian is a "physician." He notes that article 4590i defines a "physician" as "a person licensed to practice medicine in this state." TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.03(a)(8). He then asserts that veterinarians are also licensed to practice

"medicine" in this state, citing section 801.002(6) of the Texas Occupation Code. *See* TEX. OCC.CODE ANN. § 801.002(6) (Vernon Supp.2000). Warren argues that article 4590i does not limit the definition of "physician" to those licensed to practice *human* medicine in this state and, therefore, veterinarians are included in the definition of "physician."

Article 4590i does not define the practice of "medicine." However, section 1.03(6) of article 4590i defines "medical care" as "any act defined as practicing medicine in Article 4510 of the Revised Civil Statutes of Texas, 1925, as amended, ... by one licensed to practice medicine in Texas for, to, or on behalf of a patient...."

At the time article 4590i was enacted, article 4510, the Texas Medical Act,[2] defined the "practice of medicine" as follows:

Any person shall be regarded as practicing medicine within the meaning of this law:

(1) Who shall publicly profess to be a physician or surgeon and shall diagnose, treat, or offer to treat, any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof; (2) or who shall diagnose, treat or offer to treat any disease or disorder, mental or physical or any physical deformity or injury by any system or method and to effect cures thereof and charge therefor, directly or indirectly, money or other compensation....

In 1981, article 4510 was repealed and recodified as article 4495b, the Texas Medical Practice Act, which provided a comprehensive statutory scheme governing the licensing and regulation of physicians by the Texas State Board of Medical Examiners.[3] In 1999, Article 4495b was repealed

---

**2.** Act of 1907, 30 th Leg., R.S., ch. 123, 1907 Tex. Gen. Laws 224, 224, *repealed by* Act of Aug. 5, 1981, 67 th Leg., 1 st C.S., ch. 1, § 6(a), 1981 Tex. Gen. Laws 36, 36, *recodified by* Act of Aug. 5,.1981, 67 th Leg., 1 st C.S., ch. 1, § 1, 1981 Tex. Gen. Laws 1, 1, *repealed by* Act of Sept. 1, 1999, 76 th Leg., R.S., ch. 388, § 6(a), 1999 Tex. Gen. Laws 2439, 2439, *reco-*

*dified by* Act of Sept. 1, 1999, 76 th Leg., R.S., ch. 388, § 1, 1999 Tex. Gen. Laws 1462, 1462 (current version at TEX. OCC.CODE ANN. §§ 151.001—.056 (Vernon Supp.2000)).

**3.** Act of Aug. 5, 1981, 67 th Leg., 1 st C.S., ch. 1, § 1, 1981 Tex. Gen. Laws 1, 1,repealed by

and recodified in chapter 151 of the Texas Occupation Code.[4] Section 151.002(13) of the Texas Occupation Code now defines "practicing medicine" as follows:

> "Practicing medicine" means the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who (A) publicly professes to be a physician or surgeon; or (B) directly or indirectly charges money or other compensation for those services.

TEX. OCC.CODE ANN. § 151.002(a)(13). "Physician" is defined under that title as "a person licensed to practice medicine in this state." *Id.* § 151.002(a)(12). The Texas State Board of Medical Examiners is the agency of the executive branch of state government invested with the power to regulate "the practice of medicine." *Id.* § 152.001.

At the time the Legislature enacted article 4590i, a different statute, article 8890 of the Texas Revised Civil Statutes, governed the practice of veterinary medicine.[5] Section 2(1) of article 8890 defined "veterinarian" as "any person who is licensed to practice Veterinary Medicine by the Texas State Board of Veterinary Medical Examiners," and section 2(2)(A) defined the "practice of Veterinary Medicine" as "the diagnosis, treatment . . . or prevention of *animal* disease . . . ."[6] Although article 8890 was recently repealed and recodified as Chapter 801 of the Texas Occupation Code, this definition of a "veterinarian" remains unchanged. TEXAS OCC.CODE ANN. §§ 801.001—.507.

■ In light of this historical and current statutory framework, it is evident that veterinarians were not, at the time of enactment of article 4590i, nor are they now, licensed to practice "medicine" as are physicians. Instead, veterinarians were, at the time article 4590i was enacted, and are now, licensed to practice "veterinary medicine," which is expressly limited to diagnosis, treatment, or prevention of "animal" disease.[7] The reality that physicians and veterinarians have traditionally been licensed and regulated by entirely separate state boards and under entirely different statutes provides further support for differentiating between the two professions. We conclude that, by its specific use of the term "physician" and by its reference to former article 4510 for a definition of the practice of "medicine," the Legislature clearly manifested its intent to limit the scope of article 4590i to those persons licensed to practice human medicine, and never meant to include those persons licensed to practice veterinary medicine.

■ Our conclusion is supported even further by the history of the evil and the remedy sought to be effected by article 4590i. In construing a statute, a reviewing court's primary aim is to give effect to the Legislature's intent. *See Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997). The appellate court tries to give a statute the meaning the Legislature

---

*Act of Sept. 1, 1999, 76*th *Leg., R.S., ch. 388, § 6(a), 1999 Tex. Gen. Laws 2439, 2439, recodified by Act of Sept. 1, 1999, 76*th *Leg., R.S., ch. 388, § 1, 1999 Tex. Gen. Laws 1462, 1462 (current version at* TEX. OCC.CODE ANN. *§§ 151.001—.056).*

**4.** Act of Sept. 1, 1999, 76th Leg., R.S., ch. 388, § 1, 1999 Tex. Gen. Laws 1462, 1462 (current version at TEX. OCC.CODE ANN. §§ 151.001—.056).

**5.** Act of Aug. 27, 1953, 53rd Leg., R.S., ch. 342, 1953 Tex. Gen. Laws 844, 844, *repealed by* Act of Sept. 1, 1999, 76th Leg., R.S., ch.

388, § 6(a), 1999 Tex. Gen. Laws 2440, 2440, *recodified by* Act of Sept. 1, 1999, 76th Leg., R.S., ch. 388, § 1, 1999 Tex. Gen. Laws 2105, 2105 (current version at TEX. OCC.CODE ANN. §§ 801.001—.507).

**6.** *Id.* (emphasis added).

**7.** We also note that the term "veterinary" means: "of, relating to, or constituting a branch of science and art dealing with the prevention, cure or alleviation of disease . . . in *animals . . . ."* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2548 (1981) (emphasis added).

intended, keeping in mind "the old law, the evil, and the remedy." *Id.* (quoting TEX. GOV'T CODE ANN. § 312.005 (Vernon 1998)). The original Act, passed in 1977, sought to address a "medical malpractice *insurance crisis* in the State of Texas."[8] The cost bond and expert report provisions contained in section 13.01 of the statute were added in 1993.[9] The purpose of those requirements was to "address the perceived problem that litigants were filing unmeritorious claims against medical practitioners which were not adequately investigated in a timely manner. This led doctors to settle such suits, regardless of the merits, and also to expend great amounts of money on defending against ultimately 'frivolous claims.' " *Horsley–Layman v. Angeles,* 968 S.W.2d 533, 537 (Tex.App.—Texarkana 1998, no pet.) (citing HOUSE COMM. ON CIVIL PRACTICES, BILL ANALYSIS, Tex. H.B. 971, 74th Leg., R.S. (1995)).

The Legislature sought by these provisions to address the purposes of keeping down medical *insurance* costs, and thereby to reduce health care costs, by the provision allowing recoupment of expenses by a physician or health care provider from an unsuccessful litigant. *See McGlothlin v. Cullington,* 989 S.W.2d 449, 451 (Tex.App.—Austin, pet. denied 1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 616, 145 L.Ed.2d 511 (1999) (emphasis added). We are aware of no legislative history indicating a concern that an insurance crisis was affecting the cost of veterinary health care. The medical malpractice insurance crisis perceived by the Legislature concerned the cost of health care to people, not animals. We hold that veterinarians are not "physicians" within the plain meaning of article 4590i, and that statute does not apply to this case.

## II. Invited Error

Warren alternatively contends that, if article 4590i does not apply to veterinarians, the Neasbitts are nevertheless precluded from complaining of the dismissal order by the doctrine of "invited error." Specifically, Warren argues that he had previously filed a motion for summary judgment under rule 166a(i) of the Texas Rules of Civil Procedure. His "no-evidence" motion asserted that the Neasbitts could produce no evidence of negligence. He points out that the Neasbitts responded by contending that they filed this suit pursuant to article 4590i, under which they had 180 days from the date of filing of suit to provide an expert report, and that they argued they were well within that time limit for providing such a report. He contends that, by invoking article 4590i, the Neasbitts, themselves, thus invited error of the trial court in holding that the statute is applicable to this case.

■ It is elementary that a party may not "invite" error by requesting that the trial court take specific action and then complain on appeal that the trial court erred in granting the request. *Northeast Tex. Motor Lines, Inc. v. Hodges,* 138 Tex. 280, 158 S.W.2d 487–488 (1942); *See also Austin Transp. Study Policy Advisory Comm. v. Sierra Club,* 843 S.W.2d 683, 689 (Tex.App.—Austin 1992, writ denied); *Dolenz v. American Gen. Fire & Cas. Co.,* 798 S.W.2d 862, 863 (Tex.App.—Dallas 1990, writ denied). The rule, "grounded in even justice and dictated by common sense," is based on estoppel. *Northeast Tex. Motor Lines,* 158 S.W.2d at 488.

■ The record does not reflect that the trial court took any action based on the Neasbitts' response to Warren's motion for

---

8. *See* Act of Aug. 29, 1977, 65th Leg., R.S., ch. 817, § 1.02(a)(5), 1977 Tex. Gen. Laws 2040, 2040, *amended by* Act of Sept. 1, 1991, 72nd Leg. R.S., ch. 14, § 284(15), 1991 Tex. Gen. Laws 222 (current version at TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.02(a)(5) (Vernon Supp.2000)) (emphasis added).

9. *See* Act of May 25, 1993, 73d Leg., R.S., ch. 625, sec. 3, 1993 Tex. Gen. Laws 2347–49, *amended by* Act of Sept. 1, 1995, 74th Leg., R.S., ch. 140, sec. 1, 1995 Tex. Gen. Laws 985 (current version at TEX REV.CIV. STAT. ANN. art. 4590i, § 13.01).

summary judgment. Warren, himself, not the Neasbitts, invoked article 4590i as the basis for his motion to dismiss for want of prosecution. The trial court's action in granting that motion was at Dr. Warren's request, not that of the Neasbitts. The Neasbitts opposed the dismissal, seeking reinstatement on the ground that article 4590i did *not* apply to veterinarians. Therefore, it is apparent that the Neasbitts did not "invite" the action of the trial court of which they now complain. Under these circumstances, we hold that the doctrine of invited error does not apply.

### CONCLUSION

We hold that the trial court erred in dismissing this cause for want of prosecution. It follows that the trial court also erred in failing to reinstate the case which was improperly dismissed. We further hold that Appellants are not estopped from asserting the trial court's error by the doctrine of invited error. Accordingly, we reverse the dismissal order and remand this cause to the trial court for reinstatement in accordance with this opinion. *See Maida v. Fire Ins. Exch.*, 990 S.W.2d 836, 843 (Tex.App.—Fort Worth 1999, no pet.).