Arlene SCOTT, Individually and as Representative of the Estate of Dorothea Scott, Deceased, Jerry Scott Hubbard, James David Scott, Norman Scott, and Albert Scott, Appellants,

v.

BEECHNUT MANOR, Living Centers of Texas, Inc., Living Centers of America, Inc., Vencare, Inc., Vencore Hospital, Vencor, Inc., and Robert B. Teague, M.D., Appellees.

No. 14–98–00166–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 21, 2005.

Rehearing Overruled Aug. 18, 2005.

Alice Oliver Parrott, Benton Musslewhite, Cheryl Gillum Turner, Maria Teresa Arguindegui, Houston, TX, for appellants.

Alexandra Simmons, Bennett A. Midlo, Dion C. Ramos, Lori D. Proctor, Michael L. Heyman, Roger Andrew Sullivan Douglas B. Welmaker, Houston, TX, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## MAJORITY OPINION

J. HARVEY HUDSON, Justice.

Arlene Scott, individually and as representative of the Estate of Dorethea Scott, deceased, Jerry Scott Hubbard, James David Scott, Norman Scott, and Albert Scott, (the "Scotts") appeal from the summary judgment granted in favor of appellees, Beechnut Manor, Living Centers of Texas, Inc., Living Centers of America, Inc. ("Beechnut Manor"), Vencare, Inc., Vencor Hospital, Vencor, Inc. ("Vencor"), and Robert B. Teague, M.D., on their claims of violations of the Deceptive Trade Practices–Consumer Protection Act ("DTPA")[1] and common law negligence based on res ipsa loquitur, and the dismissal of their negligence claim under the Medical Liability and Insurance Improvement Act (the "Act"). We affirm.

In 1993, Dorethea Scott suffered a stroke that left her dependent on a ventilator. On October 28, 1994, the Scott family admitted her to Beechnut Manor nursing home, where she resided in the respiratory care unit, which was staffed by Vencor. Ms. Scott was under the care of Dr. Teague, who ordered constant oxygen therapy for her. The Scotts claim they were assured by the administrator that Ms. Scott would be kept on oxygen at all times. The Scotts allege Ms. Scott was taken off of oxygen on December 27, 1994, while routine maintenance was performed on the ventilator. After completing the maintenance procedure, however, the technician allegedly failed to reconnect Ms. Scott's oxygen. Ms. Scott died later that day.

On December 6, 1996, the Scotts sued appellees alleging negligence under the Act, common law negligence based on res ipsa loquitur, and violations of the DTPA. On June 30, 1997, the trial court dismissed the Scotts' health care liability claims under the Act, and on November 4, 1997, the trial court granted appellees' motion for summary judgment on the Scotts' remaining claims for common law negligence based on res ipsa loquitur and DTPA violations.

### DISMISSAL OF CLAIMS UNDER THE ACT

In their first issue, the Scotts contend the trial court erred in dismissing their claims under the Act and in overruling their motion for a new trial.

Under the Act, a claimant must provide expert reports and curricula vitae to counsel for each physician or health care provider against whom a health care liability claim is asserted. Further, the claimant must provide these reports and curricula vitae within 180 days after the filing of a health care liability claim or voluntarily nonsuit the action against the physician or healthcare provider. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d).[2] If the claim-

---

1. *See* TEX. BUS. & COM.CODE ANN. §§ 17.41–.63 (Vernon 2002 & Supp.2004–05).

2. Section 13.01 of the Act was formerly found at TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985–87, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 887 (current version found at TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (Vernon Supp. 2004–05)). The former statute continues in effect for cases filed before September 1, 2003. Because this case was filed in 1996, the former statute—TEX. REV. CIV. STAT. ANN. art. 4590i—is applicable and all references are to the former statute. Section 13.01(d) states:

> Not later than the later of the 180th day after the date on which a health care liability claim is filed or the last day of any extended period established under Subsection (f) or (h) of this section, the claimant shall, for each physician or health care provider against whom a claim is asserted:
> (1) furnish to counsel for each physician or health care provider one or more expert

ant fails to furnish the requisite reports and curricula vitae and fails to nonsuit the defendants, the court shall, on the motion of the affected physician or health care provider, dismiss the action with prejudice. *Id.* at § 13.01(e)(3).

The Scotts did not timely file expert reports and curricula vitae within 180 days of the filing of their suit as required by section 13.01(d). The time for filing the reports expired on June 4, 1997. Thus, on June 5 and 6, 1997, appellees sought a dismissal of all claims under the Act pursuant to section 13.01(e)(3). The Scotts responded on June 13, 1997, by filing the necessary reports and curricula vitae along with a "Section 13.01(f) Motion for Extension of Time."

■ Section 13.01(f) provides that the "court may, for good cause shown after motion and hearing, extend any time period specified in Subsection (d) of this section for an additional 30 days."[3] The Scotts assert that their motion for extension of time was supported by uncontroverted affidavits establishing "good cause" for the nine-day delay in filing their expert reports and curricula vitae. Thus, the Scotts argue the trial court abused its discretion in denying their motion for an extension of time as a matter of law.

It is inconsequential whether the Scotts established "good cause" because even if they made a clear showing of "good cause," the trial court was not obliged to grant the requested extension. *See Tesch v. Stroud,* 28 S.W.3d 782, 787 (Tex.App.-Corpus Christi 2000, pet. denied); *Knie v. Piskun,* 23 S.W.3d 455, 462 (Tex.App.-Amarillo 2000, pet. denied); *Schorp v. Baptist Memorial Health System,* 5 S.W.3d 727, 732 (Tex.App.-San Antonio

1999, no pet.); *Roberts v. Medical City Dallas Hosp., Inc.,* 988 S.W.2d 398, 402 (Tex.App.-Texarkana 1999, pet. denied). Accordingly, the trial court did not err in denying the Scotts' motion for an extension of time, dismissing their suit with prejudice, and overruling their motion for new trial. The first point of error is overruled.

## SUMMARY JUDGMENT

In their second issue, the Scotts contend the trial court erred in granting summary judgment to appellees. The Scotts alleged the following causes of action in their second amended petition: (1) common-law negligence involving the doctrine of res ipsa loquitur; (2) medical malpractice under the Act, and (3) violations of the DTPA. In September 1997, the trial court granted appellees' request for special exceptions, ordering the Scotts to replead and eliminate their DTPA claims and common law negligence claims based on art. 4590i and res ipsa loquitur. After the Scotts failed to replead, appellees moved for summary judgment on grounds that the Scotts' claim for common law negligence based on res ipsa loquitur did not fit in one of the recognized exceptions applicable to a medical malpractice suit and the Scotts merely attempted to recast a negligence claim as a DTPA claim. On November 4, 1997, the trial court granted summary judgment on the Scotts' remaining claims.

■ To prevail on a motion for summary judgment, a defendant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel,* 997

---

reports, with a curriculum vitae of each expert listed in the report; or

  (2) voluntarily nonsuit the action against the physician or health care provider.

*Id.*

**3.** Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(f).

S.W.2d 217, 222 (Tex.1999). Once the defendant establishes that no genuine issue of material fact exists regarding an element of the plaintiff's claim, the plaintiff must present competent summary judgment evidence raising a fact issue on that element. *Guest v. Cochran,* 993 S.W.2d 397, 401 (Tex.App.-Houston [14th Dist.] 1999, no pet.). In conducting our review of the summary judgment, we take as true all evidence favorable to the nonmovants, and make all reasonable inferences in the nonmovant's favor. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). A defendant, as movant, is entitled to summary judgment if it either disproves at least one essential element of each of the plaintiff's causes of action or establishes all the elements of an affirmative defense. *American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). If the trial court sustains a defendant's special exception that the plaintiff failed to state a cause of action and the plaintiff fails to replead when ordered to do so, summary judgment may properly be granted. *Haase v. Glazner,* 62 S.W.3d 795, 800 (Tex.2001); *Sumerlin v. Houston Title Co.,* 808 S.W.2d 724, 726 (Tex.App.-Houston [14th Dist.] 1991, writ denied).

*Res Ipsa Loquitur*

▆ Res ipsa loquitur is applicable when the following two circumstances are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence, and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex.1990). Res ipsa loquitur is a rule of evidence by which negligence many be inferred by the jury; it is not a separate cause of action from negligence. *Id.*

▆ With regard to medical malpractice cases, res ipsa loquitur applies only to those cases to which it had been applied as of August 29, 1977, the effective date of the Act. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 7.01.[4] Res ipsa loquitur is inapplicable to medical malpractice cases except where the nature of the alleged malpractice and injuries are within the common knowledge of laymen, requiring no expert testimony. *Haddock,* 793 S.W.2d at 951. The three recognized areas wherein res ipsa loquitur is applicable to medical malpractice claims are negligence in the use of mechanical instruments, operating on the wrong portion of the body, and leaving surgical instruments or sponges within the body. *Id.*

▆ However, not every medical malpractice case involving the use of a mechanical instrument permits the application of res ipsa loquitur. *Id.* Res ipsa loquitur is not applicable to those cases in which the use of the mechanical instrument is not a matter within the common knowledge of laymen. *Id.*

▆ Although the Scotts allege the negligent use of a mechanical instrument, *i.e.,* the ventilator, we conclude the use of the instrument does not fall plainly within the common knowledge of a lay person. Dr. Teague claimed in his affidavit that Ms.

---

4. Section 7.01 of the Act was formerly found at Tex.Rev.Civ. Stat. Ann. art. 4590i, § 7.01. *See* Act of June 16, 1997, 65th Leg., R.S., ch. 817, § 7.01, 1977 Tex. Gen. Laws 2039, 2050, repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 887 (current version found at Tex. Civ. Prac. & Rem.Code Ann. § 74.201 (Vernon Supp.2004–

05)). Section 7.01 states that "[t]he common-law doctrine of *res ipsa loquitur* shall only apply to health care liability claims against health care providers or physicians in those cases to which it has been applied by the appellate courts of this state as of the effective date of this subchapter." *Id.*

Scott's death was caused by respiratory failure, due to, or as the likely consequence of, a stroke. Dr. Teague further explained that Ms. Scott was "ventilator dependent, and required tube feeding, continuous nebulizer treatments, and trach care." Even if it is common knowledge that a ventilator assists a patient to breathe, we find lay persons require the assistance of expert testimony before they can presume that an injury is due to the negligent misuse of such an instrument.

Because the Scotts have not alleged facts falling within the narrow exception for res ipsa loquitur in a medical malpractice case, the trial court did not err in granting summary judgment on the grounds that the negligence claim relying on res ipsa loquitur fails as a matter of law.

### DTPA

■■■■■ The DTPA does not apply to health care providers with respect to claims for damages for personal injury or death resulting, or alleged to have resulted, from negligence. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 12.01(a).[5] Section 12.01(a) precludes a DTPA claim against a physician if it is based on a breach of the accepted standard of medical care. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex. 1994). However, if the alleged DTPA claim is not based on the physician's breach of the accepted standard of medical care, such DTPA claim is not precluded by section 12.01(a). *Id.* A claim that a physician or health care provider was negligent may not be recast as a DTPA claim to avoid the standards set forth in the Act. *Id.* To determine whether a DTPA claim is based on negligence, the court should focus solely on the plaintiff's pleadings. *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 41 (Tex.1998). Thus, the underlying nature of a claim determines whether section 12.01(a) bars a claim for violation of the DTPA. *Id.*; *Sorokolit*, 889 S.W.2d at 242. A health care liability claim is defined by the Act as "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract." Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(4).[6] Section 12.01(a) does not preclude DTPA actions for knowing misrepresentation or breach of express warranty in cases in which a physician or health care provider warrants a particular result. *Sorokolit*, 889 S.W.2d at 242.

■■■■■ With respect to their DTPA claim, the Scotts alleged:

---

**5.** Section 12.01 of the Act was formerly found at Tex.Rev.Civ. Stat. Ann. § 12.01. *See* Act of June 16, 1977, 65th Leg., R.S., ch. 817, § 12.01, 1977 Tex. Gen. Laws 2039, 2053, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 887 (current version found at Tex Civ. Prac. & Rem.Code Ann. § 74.004 (Vernon Supp. 2004–05)). Section 12.01(a) provides that "[n]otwithstanding any other law, no provisions of sections 17.41–17.63, Business & Commerce Code, shall apply to physicians or health care providers as defined in Section 1.03(a) of this Act, with respect to claims for damages for personal injury or death result-

ing, or alleged to have resulted, from negligence on the part of any physician or health care provider." *Id.*

**6.** Section 1.03(a)(4) of the Act was formerly found at Tex.Rev.Civ. Stat. Ann. § 1.03(a)(4). *See* Act of June 16, 1977, 65th Leg., R.S., ch. 817, § 12.01, 1977 Tex. Gen. Laws 2039, 2041, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 887 (current version found at Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13) (Vernon Supp.2004–05)).

Plaintiffs would show that Defendants expressly warranted and represented that Ms. Scott would be kept on oxygen, but Defendants breached that express warranty and representation and allowed Ms. Scott to go off oxygen, or inadequate oxygen, all to her detriment. This representation was "knowing" by defendants and the warranty in question was a warranty that "warrants a particular result", namely that Ms. Scott would be kept on oxygen. The breach of such warranty and the knowing misrepresentation alleged just above constituted deceptive trade practices, all of which were a proximate cause of the actual damages hereinafter alleged.

In *Mulligan v. Beverly Enters.-Tex., Inc.*, we found similar claims were essentially negligence-based claims rather than DTPA claims. 954 S.W.2d 881, 884 (Tex. App.-Houston [14th Dist.] 1997, no pet.). In that case, Mulligan alleged that the nursing home made representations about the services her aunt was to receive and express warranties about the care to be provided. *Id.* However, we determined that each alleged warranty or representation went to the level of care provided by the nursing home to the aunt. *Id.* We noted that Mulligan did not allege that services were entirely withheld from her aunt, but that the services provided were not of a level she found acceptable or in compliance with normal standards. *Id.* We held a conclusion that the representations and warranties were breached required a determination of whether the nursing home failed to meet the standard of medical care and, therefore, Mulligan was attempting to recast her negligence claim as a DTPA claim. *Id.*

In *Waters v. Del–Ky, Inc.*, the plaintiff sued the defendant nursing home for breach of an express warranty that the nursing home would provide specific services when it had not. 844 S.W.2d 250, 258 (Tex.App.-Dallas 1992, no writ). The plaintiff alleged that the nursing home breached express warranties of the physical and medical care it would provide, that its personnel would provide adequate and proper supervised care, that it would comply with all standards of participation promulgated by the Texas Department of Health, and that it would correct the deficiencies in care. *Id.* The court of appeals determined that the plaintiff's claims were claims for lack of treatment or other claimed departure from accepted standards of medical care, health care, or safety. *Id.*

Similarly, we find the Scotts' DTPA claim that appellees "expressly warranted and represented that Ms. Scott would be kept on oxygen, but that [appellees] breached that express warranty and representation and allowed Ms. Scott to go off oxygen, or inadequate oxygen, all to her detriment," is nothing more than an impermissible attempt to recast a negligence claim as a DTPA claim. Their claim is one concerning a departure from accepted standards of medical care, health care, or safety. There is no claim of guaranteed results in the care appellees would provide to Ms. Scott. Any determination that the representations and warranties were breached necessarily would require a determination of whether appellees failed to meet the standard of medical care for Ms. Scott. We conclude the trial court properly granted summary judgment on the ground that the Act precluded the Scotts from casting their negligence claim as a DTPA claim. The Scotts' second issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

FROST, J., concurring.

KEM THOMPSON FROST, Justice, concurring.

The majority's judgment and analysis are correct. I write to address the Scotts' arguments regarding section 13.01(g).[1] Essentially, they urge this court to evaluate their claimed entitlement to relief under 13.01(f) based on section 13.01(g) cases.

Although the title of the Scotts' motion states that it is a section 13.01(f) motion, we review the motion based on its substance rather than simply looking at its title or label. *See Surgitek, Bristol–Myers Corp. v. Abel,* 997 S.W.2d 598, 601 (Tex. 1999). However, a careful review of the Scotts' motion shows that its substance is consistent with its title. The pertinent portions of the motion assert "good cause" for an extension under section 13.01(f). The Scotts do not cite section 13.01(g), and they do not assert that their failure to timely file the expert reports and curricula vitae within 180 days was the result of accident or mistake rather than intentional conduct or conscious indifference. Finally, although not dispositive, the motion does not even contain a general prayer; rather, it ends by praying "for all the relief requested above." The record shows that the Scotts never sought an extension under section 13.01(g). *See Rosa v. Caldwell,* 159 S.W.3d 695, 698–99 (Tex.App.-Amarillo 2004, pet. denied) (holding that substance of motion to extend time was a section 13.01(f) motion rather than a section 13.01(g) motion and that trial court did not abuse discretion in denying the section 13.01(f) motion). And, in their appellate briefing, the Scotts have never asserted that they sought relief under section 13.01(g). Nonetheless, both at oral argument and in supplemental appellate briefing, the Scotts have argued that, even though they did not seek an extension under section 13.01(g), this court should use section 13.01(g) cases in determining whether the trial court abused its discretion in denying an extension under section 13.01(f).

The Scotts appear to be arguing that "good cause" under section 13.01(f) means "accident or mistake" and the "lack of intent or conscious indifference," which is the legal standard under section 13.01(g). The Scotts' arguments contradict the plain meaning of section 13.01.

Under section 13.01(f), the trial court "may, for good cause shown ... extend any time period specified in Subsection (d) of this section for an additional 30 days." *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985–87, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 887. Based on the plain meaning of the statutory language, an extension under section 13.01(f) is discretionary rather than mandatory. *See James v. Brothers,* 2005 WL 713671, at *2–3 (Tex.App.-Dallas Mar. 30, 2005, no pet. h.) (mem.op.) (stating that even if a movant has shown good cause, the trial court still has discretion to deny a motion for extension under section 13.01(f)). Section 13.01(g) provides that if the trial court "finds that the failure of the claimant or the claimant's attorney was not intentional or the result of conscious indifference but was the result of an accident

1. Section 13.01 of the Act was formerly found at TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01. *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985–87, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 887 (current version found at TEX. CIV. PRAC. & REM.CODE ANN § 74.351 (Vernon Supp. 2004–05)). The former statute continues in effect for cases filed before September 1, 2003. Because this case was filed in 1996, the former statute—TEX. REV. CIV. STAT. ANN. art. 4590i—is applicable and all references are to the former statute.

or mistake, the court shall grant a grace period of 30 days to permit the claimant to comply with that subsection." *See* Act of May 5, 1995, 74th Leg., R.S., ch. 140, § 1, 1995 Tex. Gen. Laws 985, 985–87, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 887. Under section 13.01(g), the granting of a 30–day grace period is mandatory upon a finding that the failure to comply was the result of accident or mistake. *Walker v. Gutierrez,* 111 S.W.3d 56, 62–63 (Tex. 2003).

Although a trial court has the discretion to find good cause and grant an extension under section 13.01(f) based on facts that also would constitute accident or mistake under section 13.01(g), this does not mean that the analysis under these two statutory provisions is the same. *See James,* 2005 WL 713671, at *2–4 (holding that analysis under section 13.01(g) is not the same as the analysis under section 13.01(f) and that the existence of accident or mistake is irrelevant because appellants moved for relief only under section 13.01(f)). Even if the Scotts had proven accident or mistake [2], that would not have mandated an extension under section 13.01(f). *See id.* at *4. To hold otherwise would be contrary to the plain meaning of language enacted by the Texas Legislature. *See id.* at *2–4. Accordingly, the Scotts are incorrect in suggesting that the analysis under section 13.01(f) is the same as the analysis under section 13.01(g).

---

[2]. It should be noted that, even if the issue were relevant, the record shows that the trial court would not have erred in finding intent or conscious indifference rather than accident or mistake.