NUMBER 13-08-00533-CV



# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**TURTLE HEALTHCARE GROUP, L.L.C.
D/B/A FRED'S PHARMACY,**                       **Appellant,**

**v.**

**YOLANDA HIGUERA LINAN AND
GODOFREDO LINAN, ET AL.,**                 **Appellees.**

---

**On appeal from the 275th District Court of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Vela
### Memorandum Opinion by Justice Garza

Appellant, Turtle Healthcare Group, L.L.C. d/b/a Fred's Pharmacy ("Turtle"), brings this interlocutory appeal challenging the trial court's denial of its motion to dismiss the lawsuit brought by appellees, Yolanda Higuera Linan and Godofredo Linan, individually, as the natural parents of Maria Yolanda Linan and Gerardo Ernesto Linan, and as representatives of the estate of Maria Yolanda Linan, deceased (collectively "the Linans").[1] By three issues, Turtle contends that the trial court erred in refusing to dismiss the case

---

[1] Godofredo Linan was not named as a plaintiff in the Linans' second and subsequent amended petitions. However, he is named on the judgment being appealed here and on the notice of appeal filed with the trial court.

because: (1) the Linans were required to serve an expert medical report and failed to timely do so; (2) the parties did not agree to extend the deadline for serving such a report; and (3) Turtle did not waive its "right to mandatory dismissal" based upon the Linans' failure to serve such a report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2008). We affirm in part and reverse and remand in part.

## I. BACKGROUND

According to allegations in their third amended original petition filed on August 19, 2008, the Linans contacted Turtle on or about July 12, 2005 to request an oxygen tank and two batteries for the ventilator machine used by Maria Linan, the daughter of Yolanda and Godofredo Linan. Maria suffered from multiple sclerosis and was prescribed the ventilator by her physician. On July 18, 2005, a Turtle employee delivered an oxygen tank. On July 19, 2005, one battery was delivered. According to the Linans, the Turtle employee who delivered the battery assured her that "a fully charged battery should last for a long period of time, including the duration of a hurricane storm system which was threatening the area." Unfortunately, the battery "turned out to be uncharged." The battery did not last long, and the Linans were not alerted by the machine that the battery charge was low. The machine eventually failed, and Maria died on July 20, 2005.

The Linans subsequently sued Turtle, alleging causes of action for negligence and gross negligence and invoking the doctrine of *res ipsa loquitur*.[2] The Linans' third amended original petition contained the following specific allegations:

> Defendant . . . was negligent in delivering a defective ventilator, battery, [and] battery boxes with connections for the Plaintiffs . . . [and] failed to exercise ordinary care in various respects, including, but not limited to the following:
>
> [1]. failing to timely provide functional equipment to its customers;
>
> [2]. failing to warn of the defect or defects described above;
>
> [3]. committing errors during the assembly phase including the warnings

---

[2] The Linans also named the manufacturer of the ventilator, Nellcor Puritan Bennett, Inc., as a defendant in their third amended original petition. This defendant is not a party to this appeal.

2

or parameters of use;

[4]. failing to install adequate safety warning devices and/or advises [sic];

[5]. using and installing warning devices which failed in use;

[6]. failing to make adequate safety tests or checks prior to and/or after sale or leasing of its equipment;

[7]. in failing to exercise reasonable care in repairing or replacing component parts of the subject ventilator, oxygen tank and/or battery[;]

[8]. failing to maintain equipment in functional and usable condition.[3]

Aruging that the Linans were required to serve an expert medical report under chapter 74 of the civil practices and remedies code but failed to timely do so, Turtle filed a motion to dismiss on July 10, 2008. The Linans subsequently filed a response to Turtle's motion contending that their claims were not "health care liability claims" under the statute and therefore the expert report requirement did not apply. After a hearing, the trial court denied the motion to dismiss on August 25, 2008, noting specifically in its order that "the claims asserted by Plaintiffs against Turtle Healthcare Group are not health care liability claims." This interlocutory appeal followed. *See id.* § 51.014(a)(9) (Vernon 2008) (permitting appeal of an interlocutory order that denies all or part of the relief sought by a motion under section 74.351(b)).

## II. STANDARD OF REVIEW

We review a trial court's order denying a motion to dismiss for failure to comply with the expert report requirement under an abuse of discretion standard. *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 32 (Tex. App.–El Paso 2006, no pet.) (applying abuse of discretion standard to trial court's denial of motion to dismiss); *Kendrick v. Garcia*, 171

---

[3] At oral argument, the Linans' appellate counsel centered his argument specifically on those claims alleging that Turtle was negligent in failing to provide properly charged batteries for Maria Linan's ventilator (the Linans' "battery claims"). Counsel did not, however, specify which of the enumerated allegations contained in the Linans' petition represent or correspond with these claims, and which do not. Indeed, many of the allegations (such as items 1, 2, 6, 7, and 8) appear to pertain to all of the Linans' claims and would fall under both the "battery claim" category and the "non-battery claim" category. Accordingly, although we reach different conclusions as to the Linans' "battery" and "non-battery" claims, we do not attempt to delineate which of the numbered items belong in which category.

3

S.W.3d 698, 702 (Tex. App.–Eastland 2005, pet. denied) (same); *see Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (applying abuse of discretion standard to trial court's granting of motion to dismiss). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 916 (Tex. App.–Dallas 2007, pet. denied). Therefore, when the issue is purely a question of law, as here, we effectively conduct a de novo review. *See Pallares v. Magic Valley Elec. Coop., Inc.*, 267 S.W.3d 67, 69-70 (Tex. App.–Corpus Christi 2008, pet. ref'd) (applying a de novo standard of review to the issue of whether chapter 74 is applicable to plaintiff's claims); *see also Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989) (holding that "matters of statutory construction are questions of law for the court to decide rather than issues of fact"); *Neasbitt v. Warren*, 22 S.W.3d 107, 109 (Tex. App.–Fort Worth 2000, no pet.) (stating that the issue of the expert report requirement's applicability is a "pure question of law").

## III. DISCUSSION

### A.    Agreement and Waiver

We first address Turtle's second and third issues. By its second issue, Turtle argues that the parties did not enter into any agreement to extend the deadline for serving the report required by chapter 74. *See id.* § 74.351(a) ("The date for serving the report may be extended by written agreement of the affected parties."). The Linans appear to claim in their response to Turtle's motion to dismiss that such an agreement was reached due to certain written correspondence between the parties' attorneys regarding a scheduling order. However, the record does not contain this correspondence, nor does it contain anything else that could be interpreted as such an agreement. Moreover, the Linans do not appear to contest on appeal the fact that no such agreement was reached.

4

Accordingly, we sustain Turtle's second issue.

Turtle contends by its third issue that it did not waive its right to mandatory dismissal under section 74.351(b).  We agree.  Waiver is defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.  *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003).  The mere fact that a defendant waits to file a motion for dismissal for failure to serve a medical expert report is insufficient to establish waiver unless the defendant's silence or inaction shows an intent to yield the right to dismissal.  *Id.* (citing *Tenneco, Inc. v. Enter. Prod. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)); *cf. Spinks v. Brown*, 211 S.W.3d 374 (Tex. App.–San Antonio 2006, no pet.) (finding waiver where defendant waited over 1,400 days—after trial, judgment for defendant, and reversal by appellate court—to file a motion to dismiss).  Participation in discovery is also insufficient to establish waiver because it is not inconsistent with the intent to assert the right to dismissal.  *Jernigan*, 111 S.W.3d at 157.  Here, Turtle filed its motion to dismiss approximately eighteen months after the Linans filed their first original petition.  However, the Linans have not pointed to any action on the part of Turtle that can be deemed inconsistent with the right to mandatory dismissal under section 74.351(b).  Accordingly, Turtle's third issue is sustained.

**B.     Health Care Liability Claim**

By its first issue, Turtle contends that the Linans' claims are "health care liability claims" under chapter 74 of the civil practice and remedies code and, therefore, that they must be dismissed due to the Linans' failure to serve an expert medical report.  *See id.* § 74.351(a), (b).

The Legislature enacted the expert report requirement for health care liability claims in order to address an "ongoing crisis in the cost and availability of medical care."  *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 2008 Tex. LEXIS 759, at *1 (Tex. 2008) (orig. proceeding).  Under the statute, a plaintiff asserting a "health care liability claim" must serve a medical expert report upon each party's attorney no later than the 120th day after

the date the original petition was filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The report must "provide[] a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). If the claim is a "health care liability claim" and no expert report is timely filed, the trial court must dismiss the claim with prejudice and award reasonable attorney's fees to the defendant. *Id.* § 74.351(b).

The sole question for this Court is whether the Linans' various claims constitute "health care liability claims" under the statute. To determine whether a cause of action falls under chapter 74's definition of a health care liability claim, we examine the claim's underlying nature. *Valley Baptist Med. Ctr. v. Stradley*, 210 S.W.3d 770, 775 (Tex. App.–Corpus Christi 2006, pet. denied). A "health care liability claim" is defined in the statute as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13) (Vernon 2005). A "health care provider" is "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care" and includes any "employee, independent contractor, or agent" thereof. *Id.* § 74.001(a)(12)(A), (a)(12)(B)(ii). It is undisputed that Turtle is a licensed pharmacy and that it provided respiratory therapy services to the Linans and others. Accordingly, Turtle is a "health care provider" under the statute. *See id.* § 74.001(a)(13); *see also* TEX. OCC. CODE ANN. § 560.001(a) (Vernon Supp. 2008) (stating that a person may not operate a pharmacy in Texas unless the pharmacy is licensed by the Texas State Board of Pharmacy).

6

Still, the Linans' claims are subject to Chapter 74's requirements only if they allege a "departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." *Id.* § 74.001(a)(13). A cause of action alleges a departure from accepted standards of medical care or health care only if the act or omission complained of is "an inseparable part of the rendition of medical services." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005).

To the extent that the Linans' allegations involve acts or omissions beyond the alleged failure to provide properly charged batteries—such as their claims involving Turtle's provision of the ventilator and its alleged failure to provide warnings and to properly maintain the ventilator—those claims clearly involve acts or omissions that are "inseparable" from the rendition of medical services. *See id.* Therefore, those claims are barred due to the Linans' failure to serve an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). However, we cannot say the same with respect to the Linans' claims alleging that Turtle was negligent in failing to provide properly charged batteries for Maria Linan's ventilator (the Linans' "battery claims").

In determining whether a claim qualifies under chapter 74's definition of "health care liability claim," a "factor we consider is whether expert testimony is necessary to prove these alleged lapses in professional judgment and treatment." *Diversicare*, 185 S.W.3d at 851. In *Diversicare*, the Texas Supreme Court considered whether the definition of "health care liability claim" included a claim that a nursing home's negligence in failing to provide adequate supervision and nursing services caused a patient's injuries from a sexual assault by another patient. *Id.* at 844-45. As part of its analysis, the Court asked: "Is expertise in the health care field required to determine the appropriate number, training and certifications of medical professionals necessary to care for and protect patients in weakened conditions from injury by other patients in a health care facility?" *Id.* at 851. Answering that question in the affirmative, the Court noted:

> It is not within the common knowledge of the general public to determine the ability of patients in weakened conditions to protect themselves, nor whether a potential target of an attack in a healthcare facility should be better protected and by what means. The general public is not trained to evaluate whether a potential attacker admitted to a health care facility should be physically or chemically restrained to prevent harm to other patients or if other patients should be better protected through increased supervision. And the general public does not know whether physical restraint is required to prevent assaults by a resident, if certain types of medication are sufficient, or if a combination of the two may be required, and to what degree these determinations depend on the propensities and physical and mental characteristics of the resident.

*Id.*

On the other hand, the underlying nature of the Linans' battery claims is simply an allegation that Turtle failed to provide functioning, properly charged batteries for Maria Linan's ventilator. It is most certainly "within the common knowledge of the general public" that electronic equipment requires functioning, properly charged batteries in order to operate. Expertise in the medical field would contribute nothing to a fact-finder's ability to determine whether the failure to provide such batteries was negligent. Expert testimony would be unhelpful and unnecessary to a jury attempting to confirm or deny these particular claims. *See id.*

Turtle notes that courts have, in other cases, found "health care liability claims" where plaintiffs have made allegations involving negligent use of medical equipment. However, those cases are not directly analogous to the factual situation with which we are presented here. For example, in *Scott v. Beechnut Manor*, 171 S.W.3d 338, 345 (Tex. App.–Houston [14th Dist.] 2005, pet. denied), the plaintiff's allegations were based on the failure of a maintenance technician to reconnect a ventilator after "routine maintenance" was performed. *Id.* at 341. The court found that "[e]ven if it is common knowledge that a ventilator assists a patient to breathe, . . . lay persons require the assistance of expert testimony before they can presume that an injury is due to the negligent misuse of such an instrument." *Id.* at 344. *Scott* is distinguishable from the instant case, however, because the court did not address the issue of whether the plaintiff's allegations were

"health care liability claims," but rather affirmed the trial court's summary judgment on the plaintiff's *res ipsa loquitur* claim. *See id.*; *see also Haddock v. Arnspiger*, 793 S.W.2d 948, 951 (Tex. 1990) (noting that, although *res ipsa loquitur* is generally inapplicable to medical malpractice cases, "an exception is recognized when the nature of the alleged malpractice and injuries are plainly within the common knowledge of laymen, requiring no expert testimony"). Accordingly, we do not find *Scott* persuasive.

In *Valley Baptist Medical Center v. Azua*, 198 S.W.3d 810, 814 (Tex. App.–Corpus Christi 2006, no pet.), the plaintiff alleged that defendant "negligently failed to block the wheels of the wheelchair and it moved," injuring plaintiff. Noting that Azua was being assisted into a wheelchair for dialysis treatment, we held that this act was "an inseparable part of the rendition of medical services" and found it to be a "health care liability claim." *Id.* Here, the provision of properly charged batteries to Maria Linan's respirator was not only separable from the rendition of her medical services, but actually was separated from those services. This was evidenced by deposition testimony of Richard Gonzalez, Turtle's warehouse supervisor, who testified that he "or one of [his] helpers" were in charge of charging the ventilator batteries for Turtle's customers.

Turtle also cites *Torres v. Memorial Hermann Hospital System*, 186 S.W.3d 43 (Tex. App.–Houston [1st Dist.] 2005, no pet.), where the court found a "health care liability claim." In *Torres*, the plaintiff alleged that the defendant hospital was negligent in failing to provide a trained health care provider to assist the plaintiff to the restroom, causing her injuries. In that case, however, the court relied on the fact that the plaintiff explicitly claimed that a trained health care provider was necessary to prevent her injuries; this undercut the plaintiff's claim that the alleged negligence was "inseparable" from the rendition of medical services. In contrast, the Linans do not assert that trained medical professionals should have been charged with the task of ensuring that the ventilator was equipped with functioning batteries. Rather, they note that it was Turtle's unlicensed "warehouse personnel" that were charged with that task and that they did so negligently.

9

We believe the Linans' battery claims are more directly analogous to the claims made by the plaintiffs in *Stradley*, 210 S.W.3d at 771, and *Tesoro v. Alvarez*, No. 13-08-00091-CV, 2009 Tex. App. LEXIS 1692, at *21 (Tex. App.–Corpus Christi Mar. 12, 2009, no pet. h.). In *Stradley*, the plaintiff fell off a treadmill at a facility located on the campus of the defendant hospital. 210 S.W.3d at 771. Even though the plaintiff's doctor allegedly "prescribed" the exercise that precipitated her fall, we found that the plaintiff's claims were not "health care liability claims," noting that "[a] jury could understand the evidentiary issues and negligence standards posed by Stradley's claims without the aid of a medical expert's report." *Id.* at 775-76. Similarly, a jury would not need an expert report to understand the evidentiary issues and negligence standards presented by the Linans' battery claims. In *Tesoro*, we found that a claim alleging misuse of a laser hair removal device was not a "health care liability claim" in part because the device "could be used by a lay person without a physician or a health care provider present." 2009 Tex. App. LEXIS 1692, at *21. Maria Linan's ventilator also could be used, and was intended to be used on a regular basis, by the Linans without any medical professional present. In cases such as these, an expert medical report is unnecessary and unhelpful, and to require such a report would be a waste of time and money for both litigants and trial courts. *See Diversicare*, 185 S.W.3d at 851.

Although plaintiffs may not use artful pleading to avoid the expert report requirement, *see, e.g., Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004), the Linans did no such thing here. Their battery claims are based on allegations of negligence involving activities that are wholly separable from the provision of health care. Moreover, the claims do not require expert testimony to be proven. We note that the Legislature chose not to classify *all claims* against health care providers as "health care liability claims." Rather, it chose to limit the definition to those that claim "departure from accepted standards of medical care, or health care, or safety or professional or administrative services *directly related to health care*." Tex. Civ. Prac. & Rem. Code Ann.

10

§ 74.001(a)(13) (emphasis added). To include claims such as the Linans' battery claims in this definition would exacerbate the crisis in the cost and availability of health care identified by the Legislature, *see In re McAllen Med. Ctr., Inc.*, 2008 Tex. LEXIS 759, at *1, by declaring to future plaintiffs that they must obtain expensive expert reports even when such reports are of no utility to the fact-finder.

For the foregoing reasons, we conclude that the Linans' battery claims are not "health care liability claims" under chapter 74 of the civil practice and remedies code. Accordingly, the trial court did not err in denying Turtle's motion to dismiss those claims based on the failure of the Linans to timely file an expert medical report. We affirm that portion of the trial court's judgment. However, the Linans' non-battery claims are barred due to their failure to serve an expert medical report. We therefore reverse that portion of the trial court's judgment and remand to the trial court for the award of reasonable attorney's fees and costs of court to Turtle. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(1). Turtle's first issue is sustained in part and overruled in part.

## IV. Conclusion

We affirm the trial court's judgment in part and reverse and remand in part.


DORI CONTRERAS GARZA,
Justice

Dissenting Memorandum Opinion
by Justice Rose Vela.

Memorandum Opinion delivered and
filed this 11th day of June, 2009.

11